JAMES B. CHANIN, SBN 76043
Law Offices of James B. Chanin
3050 Shattuck Avenue
Berkeley, CA 94705
Telephone: (510) 848-4752, Ex. 2
Facsimile: (510) 848-5819
Email: jbcofc@aol.com

RACHEL LEDERMAN, SBN 130192
NATIONAL LAWYERS GUILD, San Francisco Bay Area Chapter,
and RACHEL LEDERMAN & ALEXSIS C. BEACH, Attorneys at Law
558 Capp Street
San Francisco, CA 94110
Telephone: 415-282-9300
Fax: 510-590-9296
Email: rachel@bllaw.info

Attorneys for plaintiffs CURTIS JOHNSON ET AL.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON; MONI LAW; JOSEPH CUFF; SAM WOLSON; NISA DANG; CINDY PINCUS; EMILY POWER; REGINALD LEE JAMES aka RASHEED SHABAZZ; JOSEPH WATKINS; TODD ZIMMER; and ALLIE LOUX,<br><br>     Plaintiffs,<br><br>     v.<br><br>CITY OF BERKELEY; CITY OF HAYWARD; CHRISTINE DANIEL, individually and in her official capacity as City Manager for the City of Berkeley; MICHAEL MEEHAN, individually and in his official capacity as Police Chief for the City of Berkeley; ERIK UPSON, | No. 3:15-cv-5343<br><br>**CIVIL RIGHTS COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**42 U.S.C. § 1983**<br>**Jury Trial Demanded** |

individually and in his official capacity as a Berkeley Police Captain; ANDREW RATEAVER and RICO ROLLERI, individually and in their official capacities as Berkeley Police Lieutenants; SCOTT SALAS, individually and in his official capacity as Berkeley Police Detective; and SAMANTHA SPEELMAN, JOSHUA SMITH, JUMAANE JONES, STEVEN FLEMING, JITENDRA SINGH, BRYAN WAGGONNER, and BRIAN HARTLEY, individually and in their official capacities as Berkeley Police Officers; DIANE URBAN, in her individual and official capacity as Police Chief for the City of Hayward; BRYAN MATHEWS, individually and in his official capacity as Hayward Police Lieutenant; and DOES 1-100, inclusive;

Defendants.

## INTRODUCTION

1. This is a civil rights action for damages and injunctive relief arising from unconstitutional police attacks on peaceful protesters and journalists in Berkeley, California, on December 6, 2014. On that date, as part of the growing nationwide movement for racial justice, a March Against State Violence was held in Berkeley. This was in response to the December 3, 2014, grand jury decision not to indict the officer responsible for the chokehold death of Eric Garner in New York; the failure of authorities to hold accountable the officer who shot Michael Brown to death in Ferguson, Missouri; and countless other killings of unarmed Black people by white police officers.

2. The plaintiffs are demonstrators and journalists who attended the December 6, 2014, March Against State Violence in Berkeley.

3.  The Berkeley Police responded brutally, clubbing peaceful protesters and journalists, often from behind, some in the head, indiscriminately and unnecessarily; and using profligate amounts of teargas without justification.

4.  The City of Berkeley called in mutual aid to assist them in handling the demonstration, but failed to supervise or control the mutual aid agencies. The Hayward Police, acting as mutual aid to Berkeley, shot highly dangerous Specialty Impact Munitions at nonviolent demonstrators and used other unlawful excessive force. The Berkeley Police failed to supervise or control the mutual aid officers in their use of force against crowd members, in violation of Berkeley's duties under the Mutual Aid Agreement, state, city and constitutional law.

5.  Defendants' actions deprived plaintiffs of their rights to freedom of speech, freedom of association, and freedom of the press; to be free from unreasonable searches and seizures; to be free from the use of excessive and/or arbitrary force; to be free from unreasonable, summary punishment; to equal protection of the laws and to due process of law; and to personal liberty and freedom of movement, all guaranteed by the United States and California Constitutions.

6.  Defendants CITY OF BERKELEY, CHRISTINE DANIEL, and MICHAEL MEEHAN violated the plaintiffs' constitutional rights by maintaining customs, policies and/or practices which foreseeably would result in constitutional violations such as those suffered by the plaintiffs, and/or by their deliberate indifference in the hiring, training, supervision and discipline of City of Berkeley police officers involved in the December 6, 2014, operation. Plaintiffs are informed and believe and thereon allege that said customs, policies and/or practices encouraged, tacitly authorized and/or condoned: the use of excessive force; the failure to report the use of excessive force; the failure to hold officers and supervisors accountable for the use of excessive force; the failure to enforce policies which were intended to prevent the use of excessive force on civilians and the violation of their rights to free speech, freedom of association and freedom of the press by City of Berkeley and by mutual aid police

officers during demonstrations; the use of chemical agents and Specialty Impact Munitions against non-violent persons; racial profiling of people of color by City of Berkeley police officers; the failure to hold officers and supervisors accountable for racial profiling; and/or other customs, policies and/or practices.

## II. JURISDICTION AND VENUE

7. This action seeks damages and injunctive relief under 42 U.S.C. § 1983. This Court has jurisdiction over the action under 28 U.S.C. §§ 1331 and 1343. It has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367.

8. Venue properly lies within this District under 28 U.S.C. § l391(b). The named defendants perform their official duties in this District, and the events and omissions giving rise to plaintiffs' claims occurred in this District.

9. Plaintiffs CURTIS JOHNSON: MONI LAW; JOSEPH CUFF; SAM WOLSON; NISA DANG; CINDY PINCUS; EMILY POWER; REGINALD LEE JAMES aka RASHEED SHABAZZ; JOSEPH WATKINS; TODD ZIMMER; and ALLIE LOUX, have each filed administrative claims with the City of Berkeley, in compliance with California Government Code § 910 et seq. Plaintiffs CURTIS JOHNSON and CINDY PINCUS have additionally filed claims with the City of Hayward. All of the claims have been denied.

## III. INTRADISTRICT ASSIGNMENT

10. Pursuant to Local Rule 3-2, this action is properly assigned to the San Francisco or Oakland divisions of this Court.

## IV. THE PARTIES

**Plaintiffs**

11. Plaintiff CURTIS JOHNSON, age 30, is a resident of Los Angeles, a marketing associate with the Walt Disney Company and former NAACP staff person. Mr.

JOHNSON was visiting the Bay Area on December 6, 2014, when he encountered the demonstration by chance. Moved by the Eric Garner grand jury decision, he decided to participate in the demonstration to express his views and to support the Movement for Black Lives. Mr. JOHNSON had only been with the march for about a short period of time when he was shot in the knee with a Specialty Impact Munition, without justification.

12. Plaintiff MONI LAW, age 55, is a resident of Berkeley, a UC Berkeley alumna and city employee. Ms. LAW participated in the protest because, as the Black mother of a Black son, she wanted to march to show support for other mothers whose Black sons and daughters have been wrongfully killed by the police and urge reforms to stop the killing of unarmed Black people. Ms. LAW was urging other demonstrators to step further back from the police line, when she was clubbed in the back from behind by a Berkeley officer, and had a burning smoke grenade thrown at her, without justification.

13. Plaintiff JOSEPH CUFF, age 62, is a resident of Berkeley. He participated in the protest to call attention to the disparate treatment of Black people by the police and support the movement for Black Lives. Ms. CUFF was struck by a Berkeley officer and knocked to the ground, for no legitimate reason.

14. Plaintiff SAM WOLSON, age 25, is a professional photographer. Mr. WOLSON was on assignment for the San Francisco Chronicle newspaper photographing the December 6, 2014, demonstration, when he was clubbed in the head from behind by a Berkeley officer, for no legitimate reason.

15. Plaintiff NISA DANG, age 21, is a resident of Berkeley and a UC Berkeley student. Ms. DANG participated in the demonstration to protest anti-Black racism, which she herself experienced, and which resulted in the deaths of Michael Brown, Eric Garner and many others. Ms. DANG was urging other demonstrators to be peaceful, when she was clubbed from behind by a Berkeley officer. Another officer threw a burning smoke grenade at her. Later that night she was subjected to teargas, pushed and

jabbed with batons multiple times, and forced to walk from Berkeley to Oakland. All of this was without justification.

16. Plaintiff CINDY PINCUS, age 30, is a resident of San Francisco, an intern minister and seminary student at the time of this incident. Ms. PINCUS participated in the demonstration along with other ministers and seminary students to express her views on police violence and racism, carrying a sign reading, "Jesus Can't Breathe". When the police used teargas on the crowd and began shoving and jabbing demonstrators with batons, Ms. PINCUS started to run in an attempt to leave the area. But when Ms. PINCUS bent down to help another woman who had fallen, an officer clubbed her in the back of the head.

17. Plaintiff EMILY POWER, age 20, is a resident of Berkeley and was a Peets Coffee barrista at the time of the March Against State Violence. She heard about the march at work. Since it appeared to Ms. Power that the gathering was peaceful, she decided to participate and express her views on police violence and racism. But before the night was over, officers clubbed her repeatedly, took her to the ground, and arrested her, all without justification.

18. Plaintiff REGINALD LEE JAMES aka RASHEED SHABAZZ (hereinafter referred to as RASHEED SHABAZZ), is a resident of Alameda, age 32. He was a multimedia journalist and a fellow at UC Berkeley at the time, who was covering the demonstration as a photojournalist. Berkeley officers clubbed Mr. SHABAZZ repeatedly for no legitimate reason.

19. Plaintiff JOSEPH WATKINS, age 22, is a resident of Berkeley, and a UC Berkeley student. Mr. WATKINS attended the March Against State Violence, but was on his way home when he encountered officers hitting and shoving people. When Mr. WATKINS questioned this verbally, Berkeley officers pulled him to the ground and an officer covered his face and mouth to prevent him from giving a Legal Observer his name. Mr. WATKINS was arrested without probable cause to believe that he committed a crime.

20. Plaintiff TODD ZIMMER, age 27, is a human rights activist and works for a nonprofit racial justice organization. Mr. ZIMMER happened on the demonstration while on his way home late on December 6, and stood with the demonstrators to express his views against police and systemic racism. Mr. ZIMMER was videotaping the police conduct when he was hit multiple times by police officers who appeared to be trying to break his camera.

21. Plaintiff ALLIE LOUX, age 21, is a resident of Berkeley and a UC Berkeley student. She had not previously been involved in demonstrations, but was deeply affected by the killing of Eric Garner and the grand jury decision in his case. She decided to attend the March Against State Violence to show her support. She was intending to go home when her egress was blocked by police lines. Ms. LOUX was forced to walk south on Telegraph Avenue toward Oakland. Ms. LOUX was overcome by teargas when a teargas canister landed nearby her and caused her to fall and hit her head.

**Defendants**

22. Defendant CITY OF BERKELEY is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.

23. Defendant CITY OF HAYWARD is, and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.

24. Defendant CHRISTINE DANIEL was at all times herein mentioned the City Manager of the City of Berkeley and an authorized policymaker of the City of Berkeley responsible for the administration of City services and the enforcement of City ordinances, and the direct supervisor of CHIEF MEEHAN. DANIEL set in motion, supervised, directed, approved, and acquiesced in the constitutional violations at the December 6, 2014, demonstration, including but not limited to the use of excessive force and deprivation of the plaintiffs' First Amendment rights by Berkeley and mutual aid officers.

25. Defendant MICHAEL MEEHAN is, and at all times herein mentioned was, the Chief of Police of the City of Berkeley and an authorized policymaker of the City of Berkeley. MEEHAN set in motion, supervised, directed, approved, and acquiesced in police officers' constitutional violations at the December 6, 2014, demonstration, including but not limited to the use of excessive force and deprivation of the plaintiffs' First Amendment rights by Berkeley and mutual aid officers.

26. Defendant ERIK UPSON was at all times herein mentioned a City of Berkeley Police Captain, and was the Incident Commander in charge of the Berkeley and mutual aid police response to the December 6, 2014, demonstration. CAPTAIN UPSON supervised, directed, approved, acquiesced, and failed to intervene in officers' constitutional violations, including but not limited to the use of excessive force and deprivation of the plaintiffs' First Amendment rights by Berkeley and mutual aid officers.

27. Defendant ANDREW RATEAVER is, and at all times herein mentioned was, a City of Berkeley Police Lieutenant, and was the Operations Chief for the December 6, 2014, demonstration. LT. RATEAVER supervised, directed, approved, acquiesced and failed to intervene in officers' constitutional violations, including but not limited to the use of excessive force and deprivation of the plaintiffs' First Amendment rights by Berkeley and mutual aid officers.

28. Defendant RICO ROLLERI is, and at all times herein mentioned was, a City of Berkeley Police Lieutenant, and was the Liaison Officer directly in charge of the Mutual Aid officers for the December 6, 2014, demonstration. LT. ROLLERI supervised, directed, approved, acquiesced, and failed to intervene in officers' constitutional violations, including but not limited to the use of excessive force and deprivation of the plaintiffs' First Amendment rights by Berkeley and mutual aid officers.

29. Defendants SCOTT SALAS is, and at all times herein mentioned was, a City of Berkeley Police Detective, who participated in the police conduct complained of, as further set forth below.

30. Defendants SAMANTHA SPEELMAN, JOSHUA SMITH, JUMAANE JONES, STEVEN FLEMING, JITENDRA SINGH, BRYAN WAGGONNER, and BRIAN HARTLEY were City of Berkeley Police Officers at the time of the subject incident, who participated in the police conduct complained of, as further set forth below.

31. Defendant DIANE URBAN is, and at all times herein mentioned was, the Chief of Police for the City of Hayward and an authorized policymaker of the City of Hayward. CHIEF URBAN set in motion, supervised, directed, approved and acquiesced in police officers' constitutional violations at the December 6, 2014, demonstration, including but not limited to the use of excessive force and deprivation of the plaintiffs' First Amendment rights.

32. Defendant BRYAN MATTHEWS is, and at all times mentioned was, a City of Hayward Police Lieutenant, and the Commander of the Hayward police officers who participated in providing mutual aid to the City of Berkeley at the December 6, 2014, demonstration. LT. MATTHEWS supervised, directed, approved, acquiesced in, and failed to intervene in officers' constitutional violations, including but not limited to the shooting of plaintiff CURTIS JOHNSON and other uses of excessive force and deprivation of the plaintiffs' First Amendment rights by Hayward Police Officers.

33. The individual defendants are being sued in their individual and official capacities.

34. Plaintiffs are ignorant of the true names and/or capacities of defendants sued herein as DOES 1 through 100, inclusive, and therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. The DOE defendants include other individuals who supervised and/or participated in the conduct complained of herein. Plaintiffs are informed and believe and therefore allege that each of the DOE defendants is legally responsible and liable for the incident, injuries and damages hereinafter set forth, and

that each of said defendants proximately caused said incidents, injuries and damages by reason of their negligence, breach of duty, negligent supervision, management or control, violation of constitutional and legal rights, or by reason of other personal, vicarious or imputed negligence, fault, or breach of duty, whether severally or jointly, or whether based upon agency, employment, or control or upon any other act or omission. Plaintiffs will ask leave to amend this complaint to insert further charging allegations when such facts are ascertained.

35. In doing the acts alleged herein, defendants, and each of them, acted within the course and scope of their employment.

36. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted under color of authority and/or under color of law.

37. In doing the acts and/or omissions alleged herein, defendants, and each of them, acted as the agent, servant, employee and/or in concert with each of said other defendants.

## V. FACTUAL ALLEGATIONS

38. On December 1, 2014, the Berkeley Police learned that a March Against State Violence was planned for December 6. The City of Berkeley requested mutual aid from nearby agencies. The Hayward Police Department and several other law enforcement agencies responded and assisted Berkeley in policing the demonstration. The Hayward Police brought "less lethal" Specialty Impact Munitions, including high speed "eXact iMpact 40 mm Sponge Rounds;" shotgun fired, lead-filled "bean bag" rounds; and chemical agents, to the event. Despite state and local law which required Berkeley to remain in charge and take direct supervisory responsibility for all mutual aid units, Berkeley failed to supervise the mutual aid officers or instruct them on Berkeley's use of force policies, and did not control, inventory or in any way track their use of batons, Specialty Impact Munitions, or chemical agents on Berkeley demonstrators and journalists, resulting in some of the injuries described below.

39. The December 6 demonstration began at about 5 p.m. on the UC Berkeley campus, and then marched peacefully down Telegraph Avenue to the Public Safety Building at 2100 Martin Luther King, Jr., Way. There, the march was blocked by lines of Berkeley Police officers, who soon began hitting and pushing the demonstrators.

40. At about 6:30 p.m., when plaintiff MONI LAW turned her back to the police line to tell a demonstrator who was yelling at the police not to antagonize the officers, and to urge the crowd to step further back from the police line, a Berkeley Police Officer, defendant OFFICER JOSHUA SMITH and/or a DOE whom plaintiff is informed and believes was a Berkeley Police Officer, clubbed her from behind, without warning, striking her lower back with great force. When she turned around, defendant OFFICER JOSHUA SMITH was standing immediately behind her, out of formation. She scolded him and told him that she was reporting him for excessive force.

41. Shortly after Ms. LAW was clubbed, defendant DETECTIVE SCOTT SALAS and/or a DOE whom plaintiff is informed and believes was a Berkeley Police Officer, slammed plaintiff JOSEPH CUFF with his baton, knocking Mr. CUFF to the ground. Said defendant gave Mr. CUFF no warning before clubbing him. At the same moment that he hit Mr. CUFF, defendant SALAS and/or DOE said, "Get back!" Said defendant gave Mr. CUFF no opportunity to move before striking him.

42. Plaintiff SAM WOLSON, a professional photographer, was on assignment for the San Francisco Chronicle to cover the demonstration. Mr. WOLSON moved between the police and protesters taking photos, clearly visible as a journalist on the job with his professional camera. As Mr. WOLSON walked parallel to the police line, defendant OFFICER SAMANTHA SPEELMAN and/or a DOE whom plaintiff is informed and believes was a Berkeley Police Officer, pushed him with a baton. Mr. WOLSON continued moving in the only direction he was able to go due to the police lines. However, when Mr. WOLSON knelt to take a photo with his back slightly to the police, OFFICER SPEELMAN and/or a DOE, whom plaintiff is informed and believes was a Berkeley Police Officer, hit him again harder, from behind, on the

back of his head and upper neck, without warning. This occurred at about 6:30pm, shortly after JOSEPH CUFF was struck by a baton and knocked to the ground.

43. At about this same time, the Berkeley Police opened the way for people to move north on Martin Luther King Jr. Way toward Addison Street, but simultaneously narrowed the space through which the large crowd had to pass with what the police have termed a "protective bubble" of officers. Without broadcasting any directions to the crowd, officers struck and pushed other protesters, ostensibly for entering an undefined, unannounced "safety zone" around the officers. This was almost unavoidable due to the large crowd and the narrow space which was the only means of egress north.

44. Ms. LAW continued to try to make sure that demonstrators did not go too close to the police as they passed through the small opening that the police had made for them to continue north. She spoke to the officers, telling them that the crowd was simply trying to leave the area.

45. Like Ms. LAW, plaintiff NISA DANG was urging other demonstrators to be peaceful, with her back turned to the police line, when a DOE, whom plaintiff is informed and believes was a Berkeley Police Officer, clubbed her with a baton from behind in the head and ribs, without warning. This occurred within minutes of Ms. LAW, Mr. CUFF, Mr. WOLSON, and other crowd members being hit.

46. The attack on Mr. CUFF, a white haired, older person, and the other unprovoked baton strikes to crowd members who were simply trying to pass through the narrow area that the police had opened, dramatically escalated tension between the police and demonstrators. Still, the vast majority of the demonstrators remained peaceful.

47. As the crowd by the Public Safety Building was dissipating, Ms. LAW was in pain and planned to walk home, but ran into Cal students she knew, including NISA DANG. Ms. DANG was crying and told Ms. LAW she too had just been clubbed. At that point, DOE(S), whom plaintiffs are informed and believe were Berkeley Police Officer(s), hurled burning smoke grenades directly at Ms. LAW and Ms. DANG,

nearly hitting them. In addition to the smoke grenades, the Berkeley Police fired Specialty Impact Munitions at this time, about 6:34 p.m., even though the demonstrators were already moving northbound, which appeared to be the direction the police wanted them to go.

48. Plaintiff CURTIS JOHNSON was visiting the Bay Area from his home in Los Angeles on December 6, 2014, and was driving on I-80 when he was re-routed onto University Avenue, where police redirected him onto Sixth Street. When Mr. JOHNSON stopped at Sixth and Delaware, he encountered people who were looking for the demonstration. Mr. JOHNSON was moved by the failure of the grand jury to indict the officer who killed Eric Garner and other national events, and decided to participate. He found the demonstration near Delaware and San Pablo, where he parked and joined the march. Mr. JOHNSON had only been with the marchers for a short time when, as the demonstrators walked east on Berkeley Way at approximately 8 p.m., a line of officers blocked their path. Other officers suddenly appeared behind them. Mr. JOHNSON heard no orders, announcements or directions of any kind by the police. The only way to disperse appeared to be through parking lots which led back to University Avenue from Berkeley Way. Mr. Johnson was following the crowd through the parking lot, the only way open for him to leave the area, when Hayward Police Officers, acting as mutual aid to and in concert with the Berkeley Police, opened fire with Specialty Impact Munitions including "sponge rounds" and "beanbags". A DOE Hayward Police Officer, under the command of defendants HAYWARD LT. BRYAN MATHEWS, DOE Hayward commanders, BERKELEY LT. RICO ROLLERI, DOE Berkeley commanders, and/or their superiors, shot Mr. JOHNSON in the right knee, without warning and without justification.

49. No officers provided Mr. JOHNSON any first aid. Other demonstrators and a Legal Observer helped him and called an ambulance. Mr. JOHNSON was forced to lie on the ground, unable to walk and in extreme pain, aided only by civilian Good Samaritans, for a significant period of time before the police let the ambulance

through. The "less lethal" munition impact caused Mr. JOHNSON a bone injury, severe sprain and cartilage damage to his knee.

50. Plaintiff CINDY PINCUS also arrived at the demonstration around 8 p.m., and was in the vicinity of Telegraph and Durant at approximately 10 p.m. when the Berkeley Police and mutual aid officers began using batons and teargas to drive the crowd south on Telegraph into Oakland. The excessive use of force and heavy-handed tactics were entirely unjustified at that time because the demonstration was peaceful and much of the crowd consisted of UC Berkeley students who had gathered in response to the police activity.

51. At approximately 10:15 p.m., Ms. PINCUS was near the front of the crowd with other ministers and seminary students, carrying a sign reading, "Jesus Can't Breathe". The Berkeley Police and assisting mutual aid agencies, acting in concert with one another, advanced on the crowd using their batons in a shoving motion, yelling "Move!", and deployed teargas. Although Ms. PINCUS tried to run south on Telegraph, the direction the police seemed to want the crowd to go, she bent down to help another woman up who had fallen to the ground. She looked back over her shoulder when a DOE police officer struck her with a baton on the back of the head. Dazed and bleeding from the head, Ms. PINCUS ran. It was difficult to see due to the teargas but Ms. PINCUS was finally able to find friends who drove her to the hospital. There, her head wound was closed with staples. She sustained a concussion and permanent scar.

52. Plaintiff EMILY POWER went to the demonstration after hearing about it at work. When she went to check out the gathering at Sproul Plaza near her home, she saw a peaceful group, playing music, singing and expressing concern about racism, and decided to go along on the march. She decided to join the march. Ms. POWER marched for a while, and then went home.

53. Later that night, Ms. POWER heard people outside her window and went outside. There were many students and other people in the area near the university campus,

and a small crowd had gathered, not necessarily as part of the demonstration, but because people were curious why the police had blocked Bancroft Way.

54. At about 9:40 p.m., the Berkeley Police and mutual aid officers began jabbing and hitting peaceful crowd members with clubs, ordering them to move and physically pushing them south on Telegraph, even though another line of officers to the south was blocking their egress. It was during this confusing and chaotic scene that defendant JUMAANE JONES and/or a DOE, whom plaintiffs are informed and believe was a Berkeley Police officer, jabbed Ms. POWER, hit her repeatedly causing multiple bruises, and took her to the ground. OFFICER JONES and/or DOE officers arrested Ms. POWER, even though she had done nothing wrong. She was detained in jail overnight, before being cited to appear in court. Ms. POWER was never charged with any crime as a result of this incident.

55. Plaintiff RASHEED SHABAZZ went to the demonstration to cover the event as a journalist, arriving shortly after 9 p.m. at Telegraph and Bancroft. Mr. SHABAZZ was visibly engaged in photojournalism, filming and photographing the demonstration, when the police began pushing the crowd south on Telegraph, hitting many people with batons. The police made announcements, but there was no way for people to disperse because, as Ms. POWER also experienced, the police had surrounded them. While Mr. SHABAZZ was taking video, defendant STEVEN FLEMING and/or a DOE whom plaintiffs are informed and believe was a Berkeley Police officer, clubbed Mr. SHABAZZ in the sternum and struck his camera. The officer appeared to be aiming for the camera. Mr. SHABAZZ tried to leave the area, but as he looked for a way to leave, OFFICER FLEMING and/or a DOE, whom plaintiffs are informed and believe was a Berkeley Police officer, clubbed him again from behind with a sharp overhand blow to the side of Mr. SHABAZZ' knee.

56. Plaintiff NISA DANG had left the demonstration, but was present in the campus area when the police began pushing the crowd south on Telegraph Avenue at about 9:40 p.m.

57. Ms. DANG was caught in what became a forced march to Oakland. During this time, DOES, whom plaintiffs are informed and believe were Berkeley Police officers or mutual aid officers acting under Berkeley's direction, repeatedly doused her and many others in the crowd with teargas. Ms. DANG was pushed and jabbed multiple times with batons by DOE officers, whom plaintiffs are informed and believe were Berkeley Police officers or mutual aid officers acting under Berkeley's direction. There was no way out of the long, forced march, even though the demonstrators were peaceful and trying to comply with the police. The Berkeley Police and mutual aid officers continued to force the crowd, including Ms. DANG, to walk south until they reached Oakland.

58. Plaintiff JOSEPH WATKINS had attended the march earlier in the evening, but left to eat dinner and was on his way home, when he encountered the crowd of demonstrators on Telegraph near Channing. At that time, he saw officers hitting and shoving people. When Mr. WATKINS questioned this verbally, multiple DOES, whom plaintiffs are informed and believe were Berkeley Police Officers, grabbed him, pulled him to the ground and arrested him without justification. When a National Lawyers Guild Legal Observer called out to ask his name, defendant JITENDRA SINGH and/or a DOE officer, whom plaintiffs are informed and believe was a Berkeley Police officer, covered Mr. WATKINS' face and mouth, apparently to prevent him from being identified or giving the Legal Observer his name.

59. Mr. WATKINS was arrested without probable cause to believe he committed a crime, and spent the night in jail before being released with a citation to appear in court. However, he was never charged with any crime.

60. Plaintiff TODD ZIMMER was walking home around 11 p.m. when he came upon the demonstration. Mr. ZIMMER stood with the peaceful crowd at Telegraph and Channing for some time before the Berkeley Police again began using indiscriminate force to push the crowd south on Telegraph toward Oakland for the second time, beginning around midnight and continuing until marchers were pushed across the city

border at approximately 1:30 a.m. Mr. ZIMMER and others could not leave, because as they were being pushed south by Berkeley officers, a line of Alameda officers was pushing them north. Mr. ZIMMER, in the middle of the dense crowd, did not hear any police announcements. Mr. ZIMMER tried to videotape the police and was hit multiple times by Berkeley Police Officers without justification, including by defendants BRYAN WAGGONNER and BRIAN HARTLEY and/or DOE officers, whom plaintiffs are informed and believe were Berkeley Police officers. The officers appeared to be targeting Mr. ZIMMER's camera and trying to break it to stop him from videotaping. They hit his hand and shoulder several times.

61. Plaintiff ALLIE LOUX had participated in the march but was trying to go home when her egress was blocked by the police formations and she was pushed south on Telegraph as part of the second, late night forced march. The Berkeley Police used teargas multiple times during this more than an hour long process of forcing the crowd to walk to Oakland, even though the crowd was peaceful and complying. A canister thrown by DOE officers landed close to Ms. LOUX, and she was engulfed in gas. Her eyes were burning, and then she lost control of her limbs and fell, hitting her head. Other demonstrators picked Ms. LOUX up and friends helped her get to the emergency room. Ms. LOUX sustained a concussion and was forced to withdraw from her university classes for the semester due to her injuries.

62. At no time did any of the plaintiffs present a threat or do anything to justify the force that defendants used on them, including the chemical agents, baton strikes and shoves, and shooting of Specialty Impact Munitions.

63. There was no probable cause to believe that any of the plaintiffs had committed any crimes.

64. As a result of defendants' acts and omissions as alleged herein, the plaintiffs sustained, and may sustain in the future, physical and emotional injuries, pain and suffering, fear, and trauma.

65. As a result of defendants' acts and omissions as alleged herein, certain of the plaintiffs sustained, and may sustain in the future, medical and related expenses, lost wages, and/or other special damages in amounts to be determined according to proof.

66. As a result of defendants' acts and omissions as alleged herein, the plaintiffs sustained, and may sustain in the future, violation of and chilling of their constitutional rights to freedom of speech, expression and association and freedom of the press. All of the plaintiffs want to engage in, and associate with, similar peaceable expressive activity in the future in the City of Berkeley, including political protest, journalism and documentation of police activity, but are concerned that should they do so they may again be subjected to unlawful force, chemical agents, and arrest without probable cause.

## VI. REQUISITES FOR RELIEF

67. As against defendant CITY OF BERKELEY, plaintiffs allege that the constitutional violations alleged herein were the proximate result of decisions, orders, acts and omissions of the CITY OF BERKELEY's authorized policymakers including but not limited to defendants CHRISTINE DANIEL and MICHAEL MEEHAN, including that the police would take an aggressive crowd control approach to the December 6 demonstration and seek to break up the crowd rather than to facilitate the First Amendment activity; that mutual aid officers would not be instructed on City of Berkeley policies concerning use of force and use of munitions; that munitions and chemical agents would not be inventoried; that batons, chemical agents and impact munitions would be used in an unconstitutional, indiscriminate, unnecessary and excessive manner; that individual use of force reports would not be required; that the Berkeley Police would not supervise or control use of force by the mutual aid officers or require use of force reports by officers who used force; that high level commanders would not be at the scene; and that the police would forcibly move the demonstrators over the city border into Oakland.

68. As against defendant CITY OF BERKELEY, plaintiffs allege that the constitutional violations alleged herein were the proximate result of a repeated course of conduct by members of the Police Departments tantamount to a custom, policy, pattern or repeated practice of condoning, ratifying and/or tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens, including the rights of the plaintiffs.

69. Plaintiff is further informed and believes and thereon alleges that the constitutional violations alleged herein were the proximate result of a custom, policy, pattern or practice of deliberate indifference by defendant CITY OF BERKELEY to the repeated violations of the constitutional rights of citizens by defendant CITY OF BERKELEY's police officers, which have included, but are not limited to, the repeated use of excessive force, racial profiling, and the repeated failure to properly and/or adequately train, supervise and/or discipline officers with respect to the use of excessive force, constitutional limitations on the use of force, City policies on use of weapons and force, and racial profiling; the repeated failure by CITY OF BERKELEY high ranking officials, police department managers and/or supervisors to hold officers accountable for violating the rights of citizens; and/or other customs, policies and/or practices subject to continuing discovery.

70. Plaintiff is informed and believe that Defendants CHRISTINE DANIEL; MICHAEL MEEHAN; ERIK UPSON; ANDREW RATEAVER; RICO ROLLERI; DIANE URBAN; BRYAN MATHEWS; and DOE defendants, and/or each of them, caused the violation of the plaintiffs' constitutional rights as a result of their supervisory malfeasance and/or deliberate indifference to the need for more or different training, supervision and/or discipline of the BERKELEY and HAYWARD personnel assigned to the subject incident, including, but not limited to, defendants SCOTT SALAS, SAMANTHA SPEELMAN, JOSHUA SMITH, JUMAANE JONES, STEVEN FLEMING, JITENDRA SINGH, BRYAN WAGGONNER, BRIAN HARTLEY, and

the DOE defendants, and each of them, to prevent the foreseeable violation of plaintiffs' constitutional rights.

71. As a direct and proximate result of the conduct of defendants described herein, plaintiffs have been denied their constitutional, statutory and legal rights as stated below, and the individual plaintiffs have suffered general and special damages, including but not limited to, pain, suffering, humiliation, emotional distress, fear, anxiety, disabilities, medical and related expenses, lost wages, and other damages in amounts according to proof.

72. The individual defendants' acts were willful, wanton, malicious and oppressive and done with conscious disregard and deliberate indifference for plaintiff's rights and safety, justifying an award of punitive damages.

73. Defendants' policies, practices, customs, conduct and acts alleged herein have resulted and will continue to result in irreparable injury to the plaintiffs, including but not limited to violations of their constitutional and statutory rights. Plaintiffs have no plain, adequate or complete remedy at law to address the wrongs described herein. Plaintiffs intend in the future to exercise their constitutional rights of freedom of speech and association by engaging in demonstrations, journalism, documentation of police actions, and other expressive activities in the City of Berkeley. Defendants' conduct described herein has created fear, anxiety and uncertainty among plaintiffs with respect to their exercise now and in the future of these constitutional rights.

74. Plaintiffs therefore seek injunctive relief from this court including but not limited to police policies, training, and accountability measures, to ensure that they and persons similarly situated will not suffer violations of their rights from defendants' illegal and unconstitutional policies, customs and practices as described herein.

75. An actual controversy exists between plaintiffs and defendants in that plaintiffs contend that the policies, practices and conduct of defendants alleged herein are unlawful and unconstitutional, whereas plaintiffs are informed and believe that

defendants contend that said policies, practices and conduct are lawful and constitutional. Plaintiffs seek a declaration of rights with respect to this controversy.

76. Plaintiffs have incurred, and will continue to incur, attorneys' fees and costs in amounts to be determined according to proof.

## VII. CLAIMS FOR RELIEF

### ONE - VIOLATION OF FOURTH AMENDMENT (42 U.S.C. § 1983)

77. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

78. The acts and/or omissions of the defendants, and each of them, individually and/or while acting in concert with one another, violated plaintiffs' rights to be free from excessive force and from arrest without probable cause, under the Fourth Amendment to the United States Constitution.

79. Wherefore, the plaintiffs pray for relief as hereinafter set forth.

### TWO - VIOLATION OF FIRST AMENDMENT (42 U.S.C. § 1983)

80. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

81. The acts and/or omissions of the Defendants, and each of them, individually and/or while acting in concert with one another, violated plaintiffs' rights to freedom of speech, freedom of association, and freedom of the press, under the First Amendment to the United States Constitution.

82. Wherefore, the plaintiffs pray for relief as hereinafter set forth.

### THREE – FOURTEENTH AMENDMENT

83. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

84. The acts and/or omissions of the defendants, and each of them, individually and/or while acting in concert with one another, violated plaintiffs' rights to due process and

equal protection of the laws, and to personal liberty and freedom of movement, under the Fourteenth Amendment to the United States Constitution.

85. Wherefore, the plaintiffs pray for relief as hereinafter set forth.

## FOUR - FALSE ARREST AND FALSE IMPRISONMENT

86. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

87. Plaintiff EMILY POWER AND JOSEPH WATKINS were arrested and jailed without reasonable suspicion and without probable cause to believe that they had committed any crime.

88. Said plaintiffs were also jailed on purported suspicion of misdemeanors, in violation of Cal. Penal Code Section 853.6, which mandates citation and release for misdemeanor arrests.

89. Wherefore, the plaintiffs pray for relief as hereinafter set forth.

## FIVE - VIOLATION OF CALIFORNIA CIVIL CODE § 51.7

90. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

91. Defendants' above-described conduct violated plaintiffs' rights to be free from violence and intimidation by threat of violence because of their actual or perceived political affiliation and/or viewpoint, in violation of California Civil Code § 51.7.

92. Wherefore, the plaintiffs pray for relief as hereinafter set forth.

## SIX - VIOLATION OF CALIFORNIA CIVIL CODE § 52.1

93. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

94. The acts and/or omissions of the defendants, and each of them, individually and/or while acting in concert with one another, constituted interference, and attempted interference, by threats, intimidation and coercion, with plaintiffs' peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the State of California, in violation of California Civil Code § 52.1.

95. Wherefore, the plaintiffs pray for relief as hereinafter set forth.

### SEVEN – NEGLIGENCE

96. Plaintiffs re-allege and incorporate by reference the preceding paragraphs of this Complaint.

97. Defendants, and/or each of them, individually and/or while acting in concert with one another, owed plaintiffs the duty to use reasonable care to avoid causing foreseeable injury and damage to plaintiffs during the events described in this Complaint The above-described acts and omissions of defendants breached the duty of care defendants owed to plaintiffs.

98. In doing the acts and/or omissions as alleged herein, Defendants and/or each of them, breached said duty to use reasonable care and said breach of duty caused, and/or contributed to the cause, of plaintiffs injuries and damages as alleged in this Complaint.

99. Wherefore, the plaintiffs pray for relief as hereinafter set forth.

### VIII. JURY TRIAL DEMAND

Plaintiffs hereby demand a jury trial.

### IX. PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for judgment against defendants as follows:

1. For preliminary and permanent injunctive relief restraining defendants from engaging in the unlawful and unconstitutional actions complained of above;

2. For a declaratory judgment that defendants' conduct complained of herein violated plaintiffs' rights under the Constitution and laws of the United States and California;

3. For past, present and future general damages, including but not limited to, pain, suffering, permanent disfigurement and/or emotional distress to be determined according to proof;

4. For past, present and future special damages, including, but not limited to, medical expenses, lost wages, damage to career and/or other out of pocket losses to be determined according to proof;

5. For punitive damages against the individual defendants, and/or each of them, to be determined according to proof;

6. For statutory damages and exemplary damages pursuant to Cal. Civil Code §§ 52 and 52.1, to be determined according to proof, and for a $25,000 civil penalty per violation pursuant to Cal. Civil Code § 52;

7. For pre- and post-judgment interest as permitted by law;

8. For attorneys' fees pursuant to 42 U.S.C. § 1988 and Cal. Civil Code §§ 52 and 52.1, and/or other authorities, to be determined according to proof;

9. For costs of suit;

10. For such other and further relief as the Court may deem just and proper.


## X. CERTIFICATION OF INTERESTED ENTITIES OR PERSONS

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named parties, there is no such interest to report.


Dated: November 22, 2015       Law Offices of James B. Chanin
Rachel Lederman & Alexsis C. Beach,
Attorneys at Law
National Lawyers Guild,
San Francisco Bay Area Chapter


___/S/_____
By: RACHEL LEDERMAN
Attorneys for plaintiffs