Zach Cowan, City Attorney, SBN 96372
Lynne S. Bourgault, Deputy City Attorney, SBN 180416
BERKELEY CITY ATTORNEY'S OFFICE
2180 Milvia Street, Fourth Floor
Berkeley, CA 94704
Telephone:  (510) 981-6998
Facsimile:  (510) 981-6960
Email:  LBourgault@cityofberkeley.info

Attorneys for Defendants CITY OF BERKELEY, et al.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS JOHNSON, et al, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BERKELEY, et al, <br><br> Defendants. | No.  3:15-cv-005343 (JSC) <br><br> **BERKELEY DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS** <br><br> **Date:  March 10, 2016** <br> **Time: 9:00 a.m.** <br> **Courtroom F, 15th Floor** |

**I.    Plaintiffs' opposition concedes they failed to allege any facts to support claims against the high-ranking officials**

In their opposition, plaintiffs point to no allegations in their complaint that support claims against high-level Berkeley officials in their individual capacities.[1]  Instead, plaintiffs rely on entirely conclusory concepts of "directing," "setting in motion," "approving" and "acquiescing" in alleged constitutional violations of front-line officers.  Pltfs Opp. 6-7. Plaintiffs admit that none of these high-level officials were "on scene" at the demonstrations. *See* Pltfs. Opp. at 6:19-20 - 7:8-9 (arguing that former City Manager Daniels and Police Chief Meehan "caused the violations" by "giving orders that" "[h]igh level commanders would not be

---

[1] Plaintiffs concede that their official capacity claims against defendants Daniel, Upson, Meehan, Rateaver and Rolleri should be dismissed.  Opp. at 11:17-19.

at the scene.") Plaintiffs provide no specifics about what any of these defendants allegedly personally did to "set in motion" or "direct" or "approve" any particular officers' actions, therefore, their individual capacity claims against these high-level officials should be dismissed.

Plaintiffs argue that they have included specific allegations about "decisions" and "orders" related to the protests, but the FAC generally attributes these allegations to "defendant CITY OF BERKELEY" and not any specific individual defendant.  *See* FAC ¶ 70; Pltfs' Opp. at 6:19 – 7:9.  Unless plaintiffs have specific information that an individual defendant actually made a specific decision, caused a specific event or approved a line-officer's specific decision, their claims may only be asserted against defendant City of Berkeley.  *Kennedy v. H&M Landing, Inc.*, 529 F.2d 987, 989 (9th Cir. 1976); *Hydrick v.Hunter,* 669 F.3d 937, 942 (a plaintiff must plead that each government official defendant, through the official's own individual actions, has violated the Constitution).

Plaintiffs' opposition essentially concedes that their case is properly brought only against the City of Berkeley and line officer defendants.  All of the only specific allegations of wrongdoing in the FAC pertain to line officers in the field, and not commanding officers who are alleged to have not been "on scene."  Pltfs' Opp. at 7:16 – 10:4.  Allegations about what *Hayward* officers did during the protests cannot support claims against the former Berkeley City Manager, the Berkeley police chief and other Berkeley high-level commanders.  Pltfs' Opp. at 8:22-9:17.

Allegations that former Captain Upson was "the Incident Commander," that Lt. Rateaver was the "Operations Chief," and that Lt. Rolleri was the "Liaison Officer in charge of mutual aid officers" fall far short of providing individual specific acts by any of these defendants.  Opp. at:18-21.  For these reasons, former City Manager Daniel, Police Chief Meehan, former Capt. Upson, Lt. Rateaver and Lt. Rolleri should be dismissed as defendants in this case.

**II.     Plaintiffs fail to allege their First Amendment activity was the "but for" cause of any constitutional violation**

Plaintiffs claim their Second Cause of Action for violation of the First Amendment is based on the right to protest, right to gather news, and the right to freely associate.  Pltfs' Opp. at

1  12:5-12.  But by lumping together 11 different plaintiffs and making generalized allegations
2  against 17 different defendants, plaintiffs' fail to meet the requirement that they allege the
3  "desire to cause the chilling effect was the but-for cause" of the alleged constitutional violation.
4  *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 900-01 (9th Cir. 2008) (*quoting Skoog v.*
5  *County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006)).

6        Plaintiffs claim that "it is reasonable to infer from the allegations that the defendants'
7  motivation to chill plaintiffs' speech was a substantial cause of the police use of force and
8  arrests."  Pltfs' Opp. at 1223-13:2.  This is a concession that plaintiffs have failed to allege with
9  any specificity which officer arrested which plaintiff based solely on the desire to chill that
10  plaintiff's right to free speech or freedom of association.  (Only two of the 11 plaintiffs were
11  arrested, Emily Power and Joseph Watkins, and neither is alleged to have been a journalist.)
12  Plaintiffs also fail to allege that any defendant engaged in excessive force against any plaintiff
13  based solely on that plaintiff's status as a journalist.  On the contrary, plaintiff Wolson is alleged
14  to have been a photographer "on assignment for the San Francisco Chronicle" and to have been
15  first "pushed" with "a baton" while walking along the police lines, and later hit with a baton
16  when he "knelt to take a photo."  FAC ¶42.  This is alleged to have occurred at the same time
17  three non-journalist plaintiffs, Moni Law, Joseph Cuff, and Nisa Dang, are alleged to have been
18  hit with a baton while walking along the police line.  FAC ¶ 40, 41, 45.  It is not possible to infer
19  that all defendant officers had the requisite "but-for" motivation to violate various First
20  Amendment rights in the absence of any specific allegations that could lead to such an inference.
21  A variety of protesters are alleged to have been pushed, shoved and hit by batons in the midst of
22  a "large crowd" of protesters, who have entered "an undefined, unannounced 'safety zone'
23  around the officers" at a time when "tension between the police and demonstrators" had
24  "dramatically escalated."  FAC ¶ 11, 45, 46.  These allegations do not suggest that any particular
25  officer had any specific intent to chill a particular plaintiff's right to demonstrate, engage in
26  journalism, or freely associate. Plaintiffs' second cause of action should therefore be dismissed.
27
28

### III. Plaintiffs concede that their claims are properly brought under the Fourth Amendment, and not the Fourteenth Amendment

Plaintiffs concede that Fourth Amendment legal standards, and not the Fourteenth Amendment, govern their claims in this case. However, they assert, citing *County of Sacramento v. Lewis*, 523 U.S. 833 (1998), that their Fourteenth Amendment claim is necessary in the event the Court should conclude there was no Fourth Amendment seizure in the case of one of more plaintiffs. However, plaintiffs have made no allegations that would support a Fourteenth Amendment substantive due process claim for deprivation of life, liberty or property. Their claims regarding excessive force, unlawful arrest (in the case of two plaintiffs), and failure to provide medical care (in the case of at most three plaintiffs) fall squarely under the Fourth Amendment. Their Third Cause of Action should therefore be dismissed.

### IV. Plaintiffs provide no allegations that support a Civil Code § 51.7 claim

Plaintiffs argue that they have stated a claim under Civil Code §51.7 because plaintiffs were politically affiliated with "the Black Lives Matter demonstration." Opp. at 15:12-14. However, plaintiffs' FAC does not allege that the defendant officers were "motivated" to violate plaintiffs' constitutional rights due to their alleged political affiliation. In fact, the FAC alleges that plaintiffs Sam Wolson and Reginald Lee James attended the demonstration in their capacities as journalists. FAC ¶ 14, 18. (Plaintiff Wolson is alleged to have been affiliated with the San Francisco Chronicle although plaintiff James is not alleged to have been working for a particular media outlet at the time.) Plaintiffs failure to allege with specifics which officers were motivated against which plaintiffs based on political affiliation is fatal to their Civil Code § 51.7 claim.

### V. Plaintiffs' concede that Fourth Amendment standards of reasonableness govern and that their negligence claim is redundant

Plaintiffs concede that their negligence claim is co-extensive with their Fourth Amendment claim for unlawful arrest (in the case of two plaintiffs) and excessive force. Pltfs' Opp. at 16:3-5. However, their citation to *Hernandez v. City of Pomona*, 46 Cal. 4th 501 (2009) is misplaced, given that case held that plaintiff's negligence claim was barred by prior unsuccessful Fourth Amendment claims. Likewise, none of the other cases cited by plaintiffs

4

1  support the idea that plaintiffs in a multi-party action against multiple defendants can state
2  claims for negligence without specifically alleging which defendant breached what duty owed to
3  a particular plaintiff.  Plaintiffs should be required to specifically plead what type of negligence
4  is being alleged by specific plaintiffs against specific defendants.

## CONCLUSION

For all of the foregoing reasons, the Berkeley defendants request that the grant the requested relief.

Dated:  February 24, 2016          Respectfully submitted:

ZACH COWAN, City Attorney
LYNNE S. BOURGAULT, Deputy City Attorney


By:  _____/s/_____
     LYNNE S. BOURGAULT
     Attorneys for Defendants