1

2

3

4

5

6                    UNITED STATES DISTRICT COURT

7                  NORTHERN DISTRICT OF CALIFORNIA

8

9     CURTIS JOHNSON, et al.,              Case No.  15-cv-05343-JSC

10                Plaintiffs,
                                           **ORDER RE: BERKELEY**
11         v.                              **DEFENDANTS' MOTION TO DISMISS**

12    CITY OF BERKELEY, et al.,            Re: Dkt. No. 34

13                Defendants.

14

15        This lawsuit arises out of a protest on December 6, 2014 in Berkeley, California. Plaintiffs,

16  11 demonstrators and journalists, sue the City of Berkeley, the City of Hayward, and various

17  officials and police officers with each city, for, among other things, excessive force and first

18  amendment violations.  Now pending before the Court is the Berkeley Defendants' motion to

19  dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Having considered the parties'

20  submissions, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and

21  GRANTS the motion to dismiss in part and DENIES the motion in part.[1]  For the most part

22  Plaintiffs have adequately pled a First Amendment and negligence claims, however, the

23  supervisory liability claims and Ralph Act claims are dismissed with leave to amend.

24                          **COMPLAINT ALLEGATIONS**

25        This lawsuit arises out of a demonstration on December 6, 2014 in Berkeley, California.

26  Plaintiffs are 11 individuals who attended the demonstration, March Against State Violence, either

27  _____

28  [1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. §
636(c).  (Dkt. Nos. 6, 17, 26).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  as protesters or journalists.  (First Amended Complaint ("FAC") at ¶¶ 2, 11-21.)  The Berkeley

2  Police Department sent officers to the demonstration and requested mutual aid from nearby law

3  enforcement agencies when they learned about the protest.  (*Id*. at ¶ 38.)  Pursuant to this request,

4  the Hayward Police Department and several other law enforcement agencies responded and

5  assisted Berkeley in policing the demonstration.  (*Id*.)  The demonstration began around 5:00 p.m.

6  on the University of California, Berkeley campus and then proceeded down Telegraph Avenue to

7  the Public Safety Building at 2100 Martin Luther King, Jr., Way.  (*Id*. at ¶ 39.)   Berkeley police

8  officers blocked the demonstration once it reached 2100 Martin Luther King, Jr., Way.  (*Id*. at ¶

9  39.)

10      Although Plaintiffs were peacefully participating in the demonstration either as protesters

11  or journalists documenting the march, Berkeley police officers repeatedly struck them with batons,

12  and in some instances, deployed tear gas.  (FAC ¶¶ 40-47, 53-64.)  In addition, Plaintiffs Power

13  and Watkins were arrested and spent the night in jail although they had done nothing wrong.  (*Id*.

14  at ¶¶ 57, 61-62.)  This unlawful use of force is part of a "repeated course of conduct by members

15  of the [Berkeley] Police Department tantamount to a custom, policy, pattern or repeated practice

16  of condoning, ratifying and/or tacitly encouraging the abuse of police authority, and disregard for

17  the constitutional rights of citizens."  (*Id*. at ¶ 71.)  Berkeley City Manager Daniels and Police

18  Chief Meehan are "authorized policymakers" for the City of Berkeley and they, along with senior

19  police officers Rateaver, Rolleri, and Upson "set in motion, supervised, directed, approved, and

20  acquiesced in the constitutional violations."  (*Id*. at ¶¶ 24-28.)  Hayward police brought "Specialty

21  Impact Munitions" with them and despite "state and local law which required Berkeley to remain

22  in charge and take direct supervisory responsibility for all mutual aid units, Berkeley failed" to do

23  so.  (*Id*. at ¶ 38.)

                              **PROCEDURAL HISTORY**

25      Plaintiffs' First Amended Complaint names the City of Berkeley, the City of Hayward,

26  Christine Daniel as the Berkeley City Manager, Michael Meehan as the Chief of Police for the

27  City of Berkeley, Hayward Police Chief Urban, Hayward Police Lieutenant Matthews, and several

28  Berkeley police officers. (Dkt. No. 18.)  Plaintiffs assert seven claims for relief: (1) violation of

their Fourth Amendment rights under 42 U.S.C. § 1983; (2) violation of their First Amendment rights under 42 U.S.C. § 1983; (3) violation of the Fourteenth Amendment; (4) false arrest and false imprisonment; (5) violation of California Civil Code § 51.7; (6) violation of California Civil Code § 52.1; and (7) negligence.  (*Id*. at ¶¶ 33, 80-100.)

The Berkeley Defendants now move to dismiss certain claims.  (Dkt. No. 34.)  The City of Hayward, Chief Urban, and Lieutenant Matthews also filed a motion to dismiss (Dkt. No. 23). That motion was resolved by separate order. (Dkt. No. 44.)

### LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint where the action fails to allege "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted).   Under Federal Rule of Civil Procedure 8(a) (2) a party is only required to make "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 554 (internal citations and quotations omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the non-moving party." Manzarek v. St. Paul Fire & Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).   However, even under the liberal pleading standard of Federal Rule of Civil Procedure 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal citations and quotations omitted).   "Determining whether a complaint states a plausible claim for relief ... [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950 (2009).

United States District Court
Northern District of California

1    If a Rule 12(b)(6) motion is granted, a "district court should grant leave to amend even if

2    no request to amend the pleading was made, unless it determines that the pleading could not

3    possibly be cured by the allegation of other facts." Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir.

4    2000) (en banc) (internal quotation marks and citations omitted).

5                                    **DISCUSSION**

6    The Berkeley Defendants move to dismiss all claims against the five current and former

7    high-ranking Berkeley officials. They also move to dismiss Plaintiffs' (1) Section 1983 First

8    Amendment claim, (2) Fourteenth Amendment claim, (3) Section 51.7 claim, and (4) negligence

9    claim.

10            **A.       Section 1983 Supervisory Liability**

11    Defendants move to dismiss the Section 1983 claims against Defendants Christine Daniel

12    (the former Berkeley City Manager), Michael Meehan (Chief of Police for the City of Berkeley),

13    Erik Upson (former City of Berkeley Police Captain), Andrew Rateaver (City of Berkeley Police

14    Lieutenant), and Rico Rolleri (City of Berkeley Police Lieutenant) on the grounds that Plaintiffs

15    have failed to allege sufficient facts to support supervisory liability.  Plaintiffs concede that to the

16    extent these Defendants are sued in their official capacity, any such claims are duplicative of those

17    against the City of Berkeley.  These claims are thus dismissed without leave to amend. *See* Vance

18    v. Cnty. of Santa Clara, 928 F.Supp. 993, 996 (N.D. Cal.1996) ("[I]f individuals are being sued in

19    their official capacity as municipal officials and the municipal entity itself is also being sued, then

20    the claims against the individuals are duplicative and should be dismissed.").

21            Plaintiffs contend, however, that City Manager Daniel and Chief Meehan are subject to

22    suit in their individual capacity under a theory of supervisory liability because they are both

23    "authorized policymakers" and they "supervised, directed, approved, and acquiesced in the

24    constitutional violations on December 6, 2014."  (FAC ¶¶ 24-25.)  With respect to the alleged on-

25    scene commanders (Upson, Rateaver, and Rolleri), Plaintiffs allege that they "supervised, directed,

26    approved, acquiesced, and failed to intervene in officers' constitutional violations."  (FAC ¶¶ 26,

27    27, 28.)

28            Supervisory officials may be liable under § 1983 for violations of a plaintiff's

United States District Court
Northern District of California

constitutional rights but they "may not be held liable under Section 1983 for the unconstitutional actions of their subordinates based solely on a theory of respondeat superior."  Moss v. U.S. Secret Serv., 711 F.3d 941, 967 (9th Cir. 2013), rev'd sub nom. on other grounds, Wood v. Moss, 134 S. Ct. 2056 (2014).  A supervisor may be held liable under § 1983 upon a showing of either "(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." Starr v. Baca, 652 F.3d 1202, 1207 (9th Cir. 2011).  The supervisor defendant need not be "directly and personally involved in the same way as are the individual officers who are on the scene inflicting constitutional injury."  Id. at 1205.  Rather, a supervisor can be held liable based on the following theories:

> (1) setting in motion a series of acts by others, or knowingly refusing to terminate a series of acts by others, which they knew or reasonably should have known would cause others to inflict constitutional injury; (2) for culpable action or inaction in training, supervision, or control of subordinates; (3) for acquiescence in the constitutional deprivation by subordinates; or (4) for conduct that shows a "reckless or callous indifference to the rights of others.

Moss, 711 F.3d at 967 (internal citation omitted).

Plaintiffs' allegations as to City Manager Daniel and Chief Meehan are insufficient to state a claim under any of these theories.  Plaintiffs allege:

> the constitutional violations alleged herein were the proximate result of decisions, orders, acts and omissions of the CITY OF BERKELEY's authorized policymakers including but not limited to defendants CHRISTINE DANIEL and MICHAEL MEEHAN, including that the police would take an aggressive crowd control approach to the December 6 demonstration and seek to break up the crowd rather than to facilitate the First Amendment activity; that mutual aid officers would not be instructed on City of Berkeley policies concerning use of force and use of munitions; that munitions and chemical agents would not be inventoried; that batons, chemical agents and impact munitions would be used in an unconstitutional, indiscriminate, unnecessary and excessive manner; that individual use of force reports would not be required; that the Berkeley Police would not supervise or control use of force by the mutual aid officers or require use of force reports by officers who used force; that high level commanders would not be at the scene; and that the police would forcibly move the demonstrators over the city border into Oakland.

(FAC ¶ 70.) The conclusory allegation that Plaintiffs' injuries were the "proximate result" of

United States District Court
Northern District of California

Defendants' "decisions, orders, acts, and omissions" fails to plead the facts necessary to suggest a causal relationship between the supervisors' actions and the officers' conduct.  It is one thing to plead that City Manager Daniel and Chief Meehan ordered "the police [to] take an aggressive crowd control approach" and another to say that because they did nothing (i.e., through their omission) the police took such an approach.  "[P]laintiffs [] must allege *some* culpable action or inaction for which a supervisor may be held liable."  Moss, 711 F.3d at 968; *see also* Felarca v. Birgeneau, No. 11–cv–5719–YGR, 2014 WL 206762, at *5 (N.D.Cal. Jan. 17, 2014) (holding that the plaintiffs alleged sufficient facts to support Fourth Amendment supervisory liability claims based on the defendants' awareness that police had earlier injured protesters but nonetheless ordered police to use force and arrests not warranted under the circumstances).  In *Moss*, the Ninth Circuit rejected the protester plaintiffs' allegations of supervisor liability because the plaintiffs "ma[d]e no allegation that the supervisors took any specific action resulting in the use of excessive force by police officers on the scene of the anti-Bush demonstration."  Moss, 711 F.3d at 968; *see also* Alvarez-Orellana v. City of Antioch, No. C-12-4693, 2013 WL 3989300, at *6 (N.D. Cal. Aug. 2, 2013) (rejecting the plaintiffs' "conclusory allegations that [the sheriff] knew or should have known that his subordinates were engaging in a pattern or practice of not complying" with the law).

Plaintiffs' allegations against commanders Upson, Rateaver, and Rolleri fare no better.  Plaintiffs allege these Defendants:

> caused the violation of the plaintiffs' constitutional rights as a result of their supervisory malfeasance and/or deliberate indifference to the need for more or different training, supervision and/or discipline of the BERKELEY and HAYWARD personnel assigned to the subject incident."

(FAC ¶ 73.)  "It is insufficient for a plaintiff only to allege that supervisors knew about the constitutional violation and that they generally created policies and procedures that led to the violation, without alleging a specific policy or a specific event instigated by them that led to the constitutional violations." Cox v. California Forensic Med. Grp., No. 14-CV-04662-KAW, 2015 WL 237905, at *1 (N.D. Cal. Jan. 14, 2015); *see also* Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012) ("Plaintiffs must still allege sufficient facts to plausibly establish the defendant's

United States District Court
Northern District of California

1 knowledge of and acquiescence in the unconstitutional conduct of his subordinates.") (internal

2 quotation marks and citation omitted).  Similarly, allegations of inadequate or improper training

3 on their own are insufficient unless accompanied by "facts [] about the officers' training or

4 supervision" and specifics regarding why "any such training was deficient."  Moss, 711 F.3d at

5 968.  In sum, Plaintiffs' allegations must be more than "merely recitations of the organizational

6 role of these supervisors."  Id.

7       Accordingly, the Section 1983 claims against Defendants Daniel, Meehan, Upson,

8 Rateaver, and Rolleri in their individual capacities are dismissed with leave to amend.

9       **B.       Section 1983 First Amendment Claim**

10      "The law is settled that as a general matter the First Amendment prohibits government

11 officials from subjecting an individual to retaliatory actions . . . for speaking out." Hartman v.

12 Moore, 547 U.S. 250, 256 (2006).   "[T]o demonstrate a First Amendment violation, a plaintiff

13 must provide evidence showing that by his actions [the defendant] deterred or chilled [the

14 plaintiff's] political speech and such deterrence was a substantial or motivating factor in [the

15 defendant's] conduct."  Lacey v. Maricopa Cty., 693 F.3d 896, 916 (9th Cir. 2012) (en banc)

16 (internal citation and quotation marks omitted).   In assessing whether speech is chilled, courts

17 look to "whether an official's acts would chill or silence a person of ordinary firmness from future

18 First Amendment activities."  Id. at 916–17.  Consequently, to state a viable First Amendment

19 Section 1983 claim, Plaintiffs must plead facts sufficient to support a plausible inference that the

20 Berkeley police officers acted with retaliatory motive and that their actions had a chilling effect.

21      Defendants do not dispute that Plaintiffs were engaged in protected First Amendment

22 activity—whether as protesters or journalists—during the demonstration.  Nor could they.  *See*

23 Collin v. Jordan, 110 F.3d 1363, 1371 (9th Cir. 1996) ("Activities such as demonstrations, protest

24 marches, and picketing are clearly protected by the First Amendment.")  Defendants do, however,

25 dispute the adequacy of Plaintiffs' allegations that a "desire to cause the chilling effect was the

26 but-for cause" of the alleged constitutional violation.  *See* Skoog v. County of Clackamas, 469

27 F.3d 1221, 1231-32 (9th Cir. 2006).  Plaintiffs respond that their allegations support a plausible

28 inference that Defendants' motivation to chill Plaintiffs' speech was a substantial cause of the use

of force here.  The Court agrees.

The First Amended Complaint alleges that during the course of the demonstration Berkeley police officers used excessive force against each Plaintiff:

- Moni Law "turned her back to the police line to tell a demonstrator who was yelling at the police not to antagonize the officers, and to urge the crowd to step further back" when Defendant Berkeley Police Officer Joshua Smith or a doe defendant "clubbed her from behind, without warning."  (FAC ¶ 40.)

- Joseph Cuff was slammed to ground with a baton by Defendant Detective Scott Salas or a doe defendant with no warning.  (*Id.* at ¶ 41.)

- Sam Wolson, a photographer on assignment with the San Francisco Chronicle, was pushed by Defendant Officer Samantha Speelman or a doe with a baton and then struck in the back of his head and neck while he was kneeling taking a photograph. (*Id.* at ¶ 42.)

- Nisa Dang was urging other demonstrators to be peaceful when a Berkeley police officer clubbed her in her head and ribs with a baton.  (*Id.* at ¶ 45.)  Later, Dang was doused with teargas and pushed and jabbed with batons multiple times.  (*Id.* at ¶ 60.)

- After Dang and Law were clubbed, Berkeley police officers hurled smoke grenades at them and discharged Specialty Impact Munitions although the crowd was beginning to dissipate.  (*Id.* at ¶ 47.)

- Cindy Pincus was holding a sign reading "Jesus Can't Breath" when Berkeley Police Officers advanced on the crowd of demonstrators using their batons and deploying teargas.  (*Id.* at ¶ 54.)  As she tried to run away, she stopped to help a woman who had fallen and was struck on the back of her head with a baton by a doe defendant police officer.  (*Id.*)

- Rasheed Shabazz was working as a journalist at the demonstration when Defendant Officer Steven Fleming or another doe defendant clubbed him in the sternum and struck his camera, and then clubbed him again as he was attempting to leave the area. (*Id.* at ¶ 58.)

- Joseph Watkins was forcibly arrested when he questioned Berkeley police officers regarding their treatment of a group of demonstrators.  (*Id.* at ¶ 61.)  Defendant Jitendra Singh covered his face and mouth to prevent him from speaking to a National Lawyers Guild Legal Observer present at the scene.  (*Id.*)

- Todd Simmer was participating in the demonstration and while he was attempting to videotape the situation he was hit multiple times by Berkeley police officers, including Defendants Bryan Waggonner and Brian Hartley, without justification. (*Id.* at ¶ 63.)

- Allie Loux was part of a crowd of peaceful demonstrators when Berkeley Police Officers used teargas on the crowd multiple times, including on one occasion so close to her that she was engulfed in gas, fell, and struck her head. (*Id*. at ¶ 64.)

"[P]laintiffs have alleged sufficient facts to infer that plaintiffs' association with the protest was a substantial or motivating factor for defendants' actions." Save CCSF Coal. v. Lim, No. 14-CV-05286-SI, 2015 WL 3409260, at *9 (N.D. Cal. May 27, 2015). Further, these allegations support a reasonable inference that if Plaintiffs had not been participating in the demonstration—either as protesters or journalists—they would not have been subject to the use of force or arrested. *See, e.g.*, Bass v. City of Fremont, No. C12-4943 TEH, 2013 WL 891090, at *3 (N.D. Cal. Mar. 8, 2013) ("it is reasonable to infer that had [plaintiff] not verbally challenged [the officers], they would not have arrested [plaintiff], shoved him, or fastened his handcuffs too tightly."); *see also* Lacey v. Maricopa Cty., 693 F.3d 896, 917 (9th Cir. 2012) ("It is hard to conceive of a more direct assault on the First Amendment than public officials ordering the immediate arrests of their critics.")

Plaintiff Curtis Johnson's allegations are directed at the Hayward police officers and thus not subject to this motion. Plaintiff Emily Powers' allegations are insufficient to plausibly support the requisite intent. The FAC does not allege that Ms. Powers was participating in the demonstration at the time of her encounter; instead, she was standing with a crowd near the campus at 9:40 p.m.—"not necessarily as part of the demonstration"—when a Berkeley police officer approached, struck her repeatedly and arrested her. (*Id*. at ¶¶ 56-57.) The FAC does not allege facts to plausibly infer that the officers' conduct was motivated by a desire to chill her speech. Although she participated in the protest earlier, she has not alleged that she was part of the protest—rather than a crowd of people gathered on campus—at the time of the incident.

Defendants' motion to dismiss is therefore denied as to the First Amendment claims of all Plaintiffs except for Ms. Powers. Ms. Powers' claim is dismissed with leave to amend.

### C.    Civil Code Section 51.7 Claim

Defendants next contend that Plaintiffs' allegations are insufficient to support their claim under California Civil Code § 51.7, also known as the Ralph Civil Rights Act. The Act provides a

civil action for damages resulting from "violence, or intimidation by threat of violence" "because of political affiliation" or other protected characteristics, including race or sex.  Cal. Civ. Code § 51.7, § 51.  To state a claim under § 51.7, the complaint must allege facts sufficient to support a plausible inference that the plaintiff's political affiliation (or other protected characteristic) was a motivating reason for the defendant's conduct.  *See* Austin B. v. Escondido Union Sch. Dist., 149 Cal.App.4th 860, 880–81, 57 Cal.Rptr.3d 454 (2007).  Plaintiffs must allege more than just that they had a political affiliation.  *See* Bass, 2013 WL 891090, at *3 (concluding that plaintiff's allegation that "he is African American, the officers are white, and his stop and arrest were without justification" was "without more, insufficient to show that the officers' conduct was motivated by [plaintiff's] race"); *see also* Arres v. City of Fresno, 2011 WL 284971, at *27 (E.D. Cal. Jan. 26, 2011); East v. City of Richmond, No. C10–2392, 2010 WL 4580112, at *5 (N.D. Cal. Nov. 3, 2010).  "In order to establish that the defendant's wrongful conduct was motivated by his perception of plaintiff's political affiliation or protected characteristic, the plaintiff must show that the defendant was "biased against or had an animus against" those individuals.  Save CCSF, 2015 WL 3409260, at *15 (quoting Austin B. v. Escondido Union Sch. Dist., 149 Cal.App. 4th at 881 (2007)).

The FAC allegations do not plausibly suggest that the Berkeley Defendants were biased against or had an animus toward Plaintiffs because of their political affiliation with the Black Lives Matter movement.  Plaintiffs' suggestion that the same allegations which give rise to their First Amendment claim also leads to a reasonable inference that their participation in the Black Lives Matter movement was a motivating factor in the officers' actions is unpersuasive.  In both *Bass* and *Save CCSF*, the courts concluded that plaintiffs had alleged enough facts to give rise to a First Amendment retaliation claim, but not a claim under Section 51.7 because in each case the plaintiffs failed to allege that an animus towards the plaintiffs' membership in a protected class motivated the officer's conduct.  *See* Save CCSF, 2015 WL 3409260, at *15 ("[plaintiffs'] allegations do not show that the officers committed the alleged wrongful conduct because they were biased against or had an animus against individuals who are politically affiliated with the protest."); Bass, 2013 WL 891090, at *3.  So too here.  Plaintiffs have failed to allege any facts

1    that suggest the officers had any animus towards Plaintiffs' perceived or actual membership in the

2    Black Lives Matter movement.

3            Defendants' motion to dismiss Plaintiffs' Section 51.7 claim is therefore granted with

4    leave to amend.

5            **D.      Fourteenth Amendment Claim**

6            Plaintiffs' third claim for relief is for violation of the Fourteenth Amendment, but it is

7    neither brought pursuant to Section 1983 as required, *see* Azul-Pacifico, Inc. v. City of Los

8    Angeles, 973 F.2d 704, 705 (9th Cir. 1992), nor does it include any allegations as to how

9    Defendants violated Plaintiffs' Fourteenth Amendment rights.  In opposition to the motion to

10   dismiss, Plaintiffs concede that their use of force claims must be brought under the Fourth

11   Amendment, but state that the Fourteenth Amendment is pled in the alternative should the Court

12   conclude that there was no Fourth Amendment Seizure.  Plaintiffs have not provided any legal

13   authority for this proposition, and in fact, excessive force claims must be brought under the Fourth

14   Amendment.  *See* Graham v. Connor, 490 U.S. 386, 395 (U.S. 1989) (concluding "that all claims

15   that law enforcement officers have used excessive force – deadly or not – in the course of an

16   arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

17   Amendment and its 'reasonableness' standard, rather than under a 'substantive due process'

18   approach"); Godoy v. Cty. of Sonoma, No. 15-CV-00883-WHO, 2016 WL 269867, at *4 (N.D.

19   Cal. Jan. 22, 2016)("To the extent plaintiffs' alleged Fourteenth Amendment violations are based

20   on the officers' use of excessive force, they must be analyzed under the Fourth Amendment

21   standard.").

22           Plaintiffs likewise contend that their failure to provide medical care claim, which is

23   properly brought under the Fourth Amendment, *see* Tatum v. City & Cty. of San Francisco, 441

24   F.3d 1090, 1099 (9th Cir. 2006), is alternatively pled under the Fourteenth Amendment should the

25   Court elect to apply a standard of another circuit than the Ninth Circuit, but Plaintiffs fail to cite

26   any circuit which analyzes such claims under the Fourteenth rather than the Fourth Amendment.

27           Plaintiffs' Fourteenth Amendment Claim is thus dismissed without leave to amend as

28   duplicative of the Fourth Amendment claims.

United States District Court
Northern District of California

United States District Court
Northern District of California

### E.   Negligence Claim

Plaintiffs also allege that each Defendant individually and/or while acting in concert owed Plaintiffs a duty of care which they breached through the otherwise alleged acts and omissions. (FAC at ¶ 100.)  The Berkeley Defendants move to dismiss arguing that Plaintiffs' negligence allegations are conclusory and thus, their negligence theory unclear.

The elements of negligence under California law are: "(a) a legal duty to use due care; (b) a breach of such legal duty; [and] (c) the breach as the proximate or legal cause of the resulting injury."  Evan F. v. Hughson United Methodist Church, 8 Cal.App. 4th 828, 834 (1992) (internal quotation marks and citation omitted).  Under California law, "police officers have a duty not to use excessive force." Id. (citing Munoz v. City of Union City, 120 Cal.App. 4th 1077, 1101 (2004)).  A Fourth Amendment violation generally "suffices to establish the breach of a duty of care under California law."  *See* Young v. Cty. of Los Angeles, 655 F.3d 1156, 1170 (9th Cir. 2011) (reversing the district court's dismissal of a negligence claim predicated on excessive force).

Plaintiffs are relying on their excessive force allegations as the basis for the negligence claim.  Defendants have not moved to dismiss Plaintiffs' Fourth Amendment excessive force claim. Defendants' motion to dismiss the negligence claim is therefore denied.

### CONCLUSION

For the reasons stated above, the Berkeley Defendants' motion to dismiss is GRANTED in part and DENIED in part as follows:

- The motion is granted as the Section 1983 claims against Defendants Daniel, Meehan, Upson, Rateaver, and Rolleri in their official capacity without leave to amend, but is granted with leave to amend as to the Section 1983 claims brought against them in their individual capacity.
- The motion is granted without leave to amend as to Fourteenth Amendment claim which is duplicative of the Fourth Amendment claim.
- The motion is granted as to the Civil Code Section 51.7 claim with leave to amend.
- The motion is denied as to Plaintiffs' Section 1983 First Amendment claim (except as to Plaintiff Powers) and the negligence claim.

12

- • The motion is granted with leave to amend as to Plaintiff Power's Section 1983 First Amendment claim.

Plaintiffs' amended complaint, if any, shall be filed within 14 days of this Order.  The initial case management conference scheduled for March 31, 2016 is continued for all parties to April 14, 2016 so that the parties will have seen the amended complaint before submitting their joint case management conference statement.

This order disposes of Docket No. 34.

**IT IS SO ORDERED.**

Dated: March 11, 2016

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge