UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MONI LAW, et al., <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF BERKELEY, et al., <br><br> Defendants. | Case No. 15-cv-05343-JSC <br><br> **ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND STRIKE THE THIRD AMENDED COMPLAINT AND GRANTING LEAVE TO FILE FOURTH AMENDED COMPLAINT** <br><br> Re: Dkt. No. 67 |

This lawsuit arises out of a racial justice protest in Berkeley, California. Plaintiffs challenge the City of Berkeley and the Berkeley Police Department's response to the protest and allege that, among other things, they were subject to excessive force and violation of their First Amendment rights. Now pending before the Court is Berkeley's motion to dismiss claims in the Third Amended Complaint for lack of standing pursuant to Federal Rule of Civil Procedure 12(b)(1) and to strike certain allegations pursuant to Federal Rule of Civil Procedure 12(f). Having considered the parties' submissions, the Court concludes that oral argument is unnecessary, *see* Civ. L.R. 7-1(b), and DENIES the motion. The Court also finds good cause to GRANT Plaintiffs leave to file the Fourth Amended Complaint. (Dkt. No. 70.)

**FACTUAL ALLEGATIONS**

This lawsuit arises out of a demonstration on December 6, 2014 in Berkeley, California. Plaintiffs are eight individuals who attended the demonstration, March Against State Violence, either as protesters or journalists. (Third Amended Complaint (Dkt. No. 62) at ¶¶ 1-3, 13-21; Dkt. No. 69 (granting stipulation to dismiss claims of three plaintiffs).) The Berkeley Police Department sent officers to the demonstration and requested mutual aid from nearby law enforcement agencies when they learned about the protest. (*Id*. at ¶¶ 3-5.) Pursuant to this request, the Hayward Police Department and several other law enforcement agencies responded and assisted Berkeley in policing the demonstration. (*Id*. at ¶ 42.)

The demonstration began around 5:00 p.m. on the University of California, Berkeley campus and then proceeded down Telegraph Avenue to the Public Safety Building at 2100 Martin Luther King, Jr., Way. (*Id*. at ¶ 43.) Berkeley police officers blocked the demonstration once it reached 2100 Martin Luther King, Jr., Way and used batons to "hit and push any demonstrators who entered an unmarked, unannounced 'safety zone.'" (*Id*.) Although Plaintiffs were peacefully participating in the demonstration either as protesters or journalists documenting the march, Berkeley police officers repeatedly struck them with batons, and in some instances, deployed tear gas. (*Id.* ¶¶ 44-70.) In addition, Plaintiff Watkins was arrested and spent the night in jail although he had done nothing wrong. (*Id*. at ¶ 66.)

Plaintiffs contend that this unlawful use of force is "the proximate result of a custom, policy, pattern or practice of deliberate indifference by defendant City of Berkeley to the repeated violations of the constitutional rights of citizens by defendant City of Berkeley's police officers, which have included, but are not limited to, the repeated use of excessive force, racial profiling, and the repeated failure to properly and/or adequately train, supervise and/or discipline officers with respect to the use of excessive force, constitutional limitations on the use of force, City policies on use of weapons and force, and racial profiling; the repeated failure by City of Berkeley high ranking officials, police department managers and/or supervisors to hold officers accountable for violating the rights of citizens; and/or other customs, policies and/or practices." (*Id*. at ¶ 80.) Berkeley Police Chief Michael Meehan is an "authorized policymaker" for the City of Berkeley

who "set in motion, supervised, directed, approved, and acquiesced in the constitutional violations." (*Id*. at ¶ 23.) Berkeley Police Captain Erik Upson was the Incident Commander in charge of Berkeley and the mutual aid police response who was on scene and "supervised, directed, approved, acquiesced, and failed to intervene in officer's constitutional violations" along with senior officers Andrew Rateaver and Rico Rolleri. (*Id*. at ¶¶ 24-26.) Upson and Rolleri failed to instruct or supervise the mutual aid responders which included Hayward police officers who brought "Specialty Impact Munitions" with them despite "state and local law which required Berkeley to remain in charge and take direct supervisory responsibility for all mutual aid units." (*Id*. at ¶¶ 24, 26, 42.)

**PROCEDURAL HISTORY**

Plaintiffs filed this action nearly a year after the at-issue protest naming both the City of Berkeley and several individual Berkeley police officers as Defendants as well as the City of Hayward, Hayward Chief of Police Diane Urban, and Hayward Police Lieutenant Bryan Matthews. (Dkt. No. 1.) Before any Defendants answered or appeared, Plaintiffs filed an amended complaint. (Dkt. No. 18.) Both the Hayward and the Berkeley Defendants moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. Nos. 22 & 23.) These motions were granted in part and denied in part and Plaintiffs thereafter filed the Second Amended Complaint. (Dkt. Nos. 44, 45 & 49.) Plaintiffs subsequently resolved their claims with the Hayward Defendants and the Court granted Plaintiffs leave to file the now operative Third Amended Complaint ("TAC"). (Dkt. Nos. 60 & 62.)

The TAC names the City of Berkeley, Michael Meehan as the Chief of Police for the City of Berkeley, and several Berkeley police officers (collectively, "Berkeley"). (Dkt. No. 62.) Plaintiffs assert seven claims for relief: (1) violation of their Fourth Amendment rights under 42 U.S.C. § 1983; (2) violation of their First Amendment rights under 42 U.S.C. § 1983; (3) false arrest and false imprisonment; (4) assault and battery; (5) violation of California Civil Code § 51.7; (6) violation of California Civil Code § 52.1; and (7) negligence. (*Id*. at ¶¶ 88-113.) The Third Amended Complaint is filed as a putative class action seeking injunctive and declaratory relief on behalf of a class of "all persons who wish to participate in or report on public

demonstrations in the City of Berkeley." (*Id*. at ¶ 34.)

In response to the TAC, Defendants filed the underlying motion to dismiss and strike portions of the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).[1] (Dkt, No. 67.) Five days later, Plaintiffs filed a Fourth Amended Complaint. (Dkt. No. 70.) However, Plaintiffs thereafter timely filed an opposition to Berkeley's motion which notes that Plaintiffs misread Federal Rule of Civil Procedure 15 to allow a Fourth Amended Complaint as of right. Plaintiffs contend that the TAC is adequate and also seek leave to file the Fourth Amended Complaint should the Court find any deficiencies in the TAC. (Dkt. No. 74.)

## DISCUSSION

Defendants' motion raises three primary arguments. First, Defendants move to strike Plaintiffs' class allegations contending that the proposed class is not adequately defined and Plaintiffs have not adequately alleged the prerequisites for a class action under Federal Rule of Civil Procedure 23(a) or (b)(2). Second, Defendants move to dismiss Plaintiffs' claims for injunctive and declaratory relief for lack of standing. Finally, Defendants move to strike Plaintiffs' allegations regarding injuries from mutual aid agencies, specialty impact munitions, and racial profiling. None of these arguments are availing.

**A. Defendants' Motion to Strike Class Allegations is Procedurally Flawed**

Defendants move to strike Plaintiffs' class allegations pursuant to Federal Rule of Civil Procedure 12(f). Under Rule 12(f), the "court may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Defendants have not cited, and the Court is not aware, of any Ninth Circuit Court of Appeals case concluding that Rule 12(f) is an appropriate vehicle for resolving the propriety of class claims. This lack of case law support is unsurprising given that in the Ninth Circuit a motion to strike may only be granted where the allegations in question are "(1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973–74 (9th Cir. 2010). None of Defendants' arguments fall within one of these categories. *See, e,g*, *Tasion Commc'ns, Inc. v.*

---

[1] That same day, the parties filed a stipulation to dismiss the claims of two of the Plaintiffs and four of the individual defendants which the Court granted. (Dkt. Nos. 66 & 69.)

4

*Ubiquiti Networks, Inc.*, 2014 WL 1048710 at *3-4 (N.D. Cal. March 14, 2014) (concluding that Rule 12(f) is not the proper procedural vehicle for challenging class claims).

Some district courts within the Ninth Circuit have entertained Rule 12(f) motions to strike class allegations. They note, however, that such motions are disfavored and "apply a very strict standard": "[o]nly if the court is convinced that any questions or law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken." *Roy v. Wells Fargo Bank, N.A.*, No. 14-CV-04661-SC, 2015 WL 1408919, at *2 (N.D. Cal. Mar. 27, 2015) (internal quotation marks and citations omitted). Even if the Court were to conclude that Rule 12(f) is an appropriate procedure to challenge the class allegations here, Defendants have not shown that the class allegations cannot succeed.

Plaintiffs seek certification of a Rule 23(b)(2) class which requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Plaintiffs allege that "[b]y ordering officers to use unjustified indiscriminate force on the crowd at the 2014 demonstration, and failing to adopt policies prohibiting such use of excessive force following that event, defendants have acted on grounds generally applicable to the class, so that injunctive and declaratory relief is appropriate respecting the class as a whole." (TAC ¶ 37.) Plaintiffs also allege that their First Amendment rights, and those of the class, were chilled by these same policies and orders and seek to enjoin further implementation of these policies. (*Id*. at ¶ 36.) Defendants have not established at this early stage in the proceedings that a (b)(2) class cannot be certified; accordingly, Defendants' motion to strike the class allegations is denied.

**B. Defendants' Standing Arguments are Misplaced**

Defendants' related argument that Plaintiffs lack standing to pursue equitable relief claims—for injunctive and declaratory relief—because there is no case or controversy fares no better. "To satisfy Article III's case or controversy requirement, [a plaintiff] needs to show that he has suffered an injury in fact, that the injury is traceable to the challenged action of [the defendant], and that the injury can be redressed by a favorable decision." *Fortyune v. Am. Multi–Cinema, Inc*., 364 F.3d 1075, 1081 (9th Cir. 2004). In the injunctive relief context, plaintiffs also

1   must demonstrate that there is "a sufficient likelihood that [they] will again be wronged in a
2   similar way—[t]hat is, [t]he[y] must establish a 'real and immediate threat of repeated injury.'" *Id*.
3   (internal citation and quotation marks omitted).   Defendants contend that Plaintiff cannot do so
4   because they only allege that on information and belief Defendants acted or refused to act in a
5   manner that creates an ongoing controversy.

6   Plaintiffs' factual allegations are more developed than Defendants suggest.  As noted with
7   respect to the adequacy of Plaintiffs' class claims, Plaintiffs allege that the constitutional
8   violations claimed here are part of a repeated course of conduct by the Defendants because
9   Defendants have not adopted adequate polices.  (TAC at ¶ 74.)  Further, Plaintiffs allege that they

> have no plain, adequate or complete remedy at law to address the wrongs described herein. Plaintiffs intend in the future to exercise their constitutional rights of freedom of speech and association by engaging in demonstrations, journalism, documentation of police actions, and other expressive activities in the City of Berkeley. Defendants' conduct described herein has created fear, anxiety and uncertainty among plaintiffs with respect to their exercise now and in the future of these constitutional rights.

(*Id*. at ¶ 84.)

Plaintiffs' allegations are not just that they fear they will be subject to excessive force should they engage in future protect activity, but that Defendants' lack of policies regarding police response to protest activity has chilled their future exercise of their First Amendment rights.  As noted by another court in this district, "allegations showing a plaintiff's continued intent to engage in protected speech and a governmental entity's continued efforts to chill such speech may establish a likelihood of future injury sufficient for standing." *Bass v. City of Fremont*, No. C12–4943 TEH, 2013 WL 891090, at *9 (N.D.Cal. Mar. 8, 2013); *see also Save CCSF Coal. v. Lim*, No. 14-CV-05286-SI, 2015 WL 3409260, at *10 (N.D. Cal. May 27, 2015) (concluding that plaintiffs had standing to pursue injunctive relief for their First Amendment claim because it was "plausible that plaintiffs are presently unable to engage in First Amendment activities due to fear of arrest or sanctions and that plaintiffs will be subjected to similar alleged misconduct if they attempt to engage in expressive activity...").

Defendants' attempt to discredit Plaintiffs' allegations regarding Berkeley's lack of

6

policies by seeking judicial notice of the minutes of a Berkeley City Council meeting from February 10, 2015 is unavailing. (Dkt. No. 68.) First, although the minutes are judicially noticeable, all they show is that the city council voted in favor of Councilmember Arreguin's recommendations for (1) a review of the Berkeley Police Department's policies and practices regarding crowd control, use of force, and mutual aid on February 10, 2015, and (2) a temporary ban on the use of chemical agents, specialty impact munitions, and over the shoulder baton strikes, but not that they actually took any action or the current status of this issue. *See In re Bare Escentuals, Inc. Sec. Lit.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (holding that although the Court "may take judicial notice of the existence of unrelated court documents...it will not take judicial notice of such documents for the truth of the matter asserted therein." ). Second, in *White v. Lee*, 227 F.3d 1214 (9th Cir. 2000), the Ninth Circuit held that the defendant's recent implementation of a policy which addressed the plaintiffs' request for injunctive relief was insufficient to defeat standing at the pleading stage because "implementation of such a temporary policy was insufficient to eliminate the plaintiffs' standing to seek prospective relief." *Id*. at 1243. So too here. That the City Council voted in favor of review of the polices in February 2015 and placed a *temporary* ban on the use of the some of the practices challenged here says nothing about what has happened over the course of the last 18 months and does not eliminate Plaintiffs' request for prospective injunctive relief.[2]

Defendants' motion to dismiss Plaintiffs equitable relief claims is therefore denied.

---

[2] To the extent that Defendants seek to introduce additional documents bolstering these arguments on reply, they are untimely. *See World Lebanese Cultural Union, Inc. v. World Lebanese Cultural Union of New York, Inc*., No. No 11-01442 SBA, 2011 WL 5118525, at *6 (N.D. Cal. Oct. 28, 2011)("New evidence or analysis presented for the first time in a reply is improper and will not be considered."). Further, although Defendants nowhere reference the legal standard governing a motion to dismiss for lack of standing under Federal Rule of Civil Procedure 12(b)(1), such an attack can be facial or factual. *See White v. Lee*, 227 F.3d at 1242. Defendants' opening brief focused on the adequacy of Plaintiffs' factual allegations and was thus a facial attack; Defendants thus cannot now convert their attack into a factual attack and ask the Court to review new evidence and arguments not presented in their moving papers.

**C. Defendants' Motion to Strike Particular Allegations is Unpersuasive**

Lastly, Defendants move to strike any allegations which reference injuries from mutual aid agencies, specialty impact munitions, and racial profiling. For example, Defendants move to strike the allegation that "[a]t about 9:40 p.m., the Berkeley Police and mutual aid officers began jabbing and hitting peaceful crowd members with clubs, ordering them to move and physically pushing them south on Telegraph, even though another line of officers to the south was blocking their egress." (TAC at ¶ 58.) They also object to numerous paragraphs which reference mutual aid officers, the use of specialty impact munitions, and racial profiling in addition to the many other issues for which Plaintiffs allege inadequate policies and practices. *See, e.g.*, *id*. at ¶ 7 ("polices and/or practices encouraged...failure to report use of excessive force...prevent the use of excessive force...the violation of their rights to free speech, freedom of association and freedom of the press by City of Berkeley and by mutual aid police officers during demonstrations; the use of chemical agents and Specialty Impact Munitions against non-violent persons; racial profiling of people of color..."); *id*. at ¶ 23 (Defendant Meehan allegedly "set in motion, supervised, directed, approved, and acquiesced in police officers' constitutional violations at the December 6, 2014, demonstration, including but not limited to the use of excessive force and deprivation of the plaintiffs' First Amendment rights by Berkeley and mutual aid officers."). Finally, Defendants take issue with allegations that "Berkeley requested mutual aid from nearby agencies...Hayward Police brought 'less lethal" Specialty Impact Munitions...[and that] [d]espite state and local law which required Berkeley to remain in charge and take direct supervisory responsibility...failed to supervise the mutual aid officers or instruct them on Berkeley's use of force policies or on constitutional limits on the use of force, and did not control, inventory or in any way track their use of [force]." *Id*. at ¶ 42.

Defendants do not move to dismiss any claims based on these allegations, but rather, object to the inclusion of language referring to mutual aid, specialty impact munitions, and racial profiling because Plaintiffs "concede" they were not injured as a result of any of these allegations. In response, Plaintiffs contend that with respect to the mutual aid officers, they cannot say with certainty at this point which officers and/or agencies were responsible for each of the acts alleged

8

in the complaint for Plaintiffs Dang, Shabazz, and Loux.  Further, Plaintiffs contend that the allegations regarding specialty impact munitions are relevant because Plaintiffs and members of the class were subject to repeated threats regarding use of force and specialty impact munitions.  As for the racial profiling references, Plaintiffs suggest in their opposition brief that "defendants' use of force against the Black plaintiffs may have been racially motivated, given the recently released statistics which show stark racial disparities in BPD's stops."  (Dkt. No. 74 at 22:14-17.)  These allegations, however, are not in the TAC or the proposed Fourth Amended Complaint.

       At bottom, Defendants' arguments are a challenge to the relevance of Plaintiffs' allegations regarding mutual aid, specialty impact munitions, and racial profiling.  "The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." *SidneyVinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983).  "A court must deny [a] motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action." *Oracle Am., Inc. v. Micron Tech., Inc.*, 817 F. Supp. 2d 1128, 1132 (N.D. Cal. 2011).  Conversely then, a court may grant a motion to strike only where "it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1179 (S.D. Cal. 2012).  The Court cannot say at this stage that Plaintiffs' allegations regarding mutual aid and specialty impact munitions have no possible bearing on the subject matter of this litigation.[3]  While Plaintiffs' allegations regarding racial profiling present a closer question, the Court cannot say with certainty that they have no bearing on this action.  Further, striking these allegations would run afoul of the rule forbidding courts from reading a motion to strike "in a manner that allow litigants to use it as a means to dismiss some or all of a pleading." *Whittlestone*, 618 F.3d at 974; *see also Harvey v. Bank of Am., N.A.*, 906 F.Supp.2d 982, 996 (N.D. Cal. 2012) ("Rule 12(f) may not be used to make an end-run around Rule 12(b)(6) standards or summary judgment procedures.").

---

[3] Further, these allegations are enhanced in the proposed Fourth Amended Complaint wherein Plaintiffs allege that Defendants' on-going failure to supervise and control mutual aid responders has chilled their First Amended rights (dkt. no. 70 at ¶¶ 11, 41, 43, 74-76, 80), and that they were injured through repeated threats of use of specialty impact munitions (*id*. at ¶¶ 6, 11, 60, 64).

Defendants' motion to strike Plaintiffs' claims regarding mutual aid, specialty impact munitions, and racial profiling is therefore denied.

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss and strike the class allegations is DENIED. (Dkt. No. 67.) The Court also finds that there is good cause to grant Plaintiffs leave to file the previously submitted Fourth Amended Complaint. (Dkt. No. 70.) Defendants shall file their answer to the Fourth Amended Complaint within 14 days.

The parties shall appear for a Case Management Conference on November 17, 2016 at 1:30 p.m. in Courtroom F, 450 Golden Gate Ave., San Francisco, California. An updated Joint Case Management Conference statement is due November 10, 2016.

**IT IS SO ORDERED.**

Dated: August 9, 2016

JACQUELINE SCOTT CORLEY
United States Magistrate Judge