Honorable Magistrate Judge Jacqueline Scott Corley
Re: *Moni Law et al. v. City of Berkeley, et al.,* No. 15-cv-5343 JSC

## JOINT STATEMENT OF DISCOVERY DISPUTE 2

**Plaintiffs' Summary of Meet and Confer Communications**
Following the meet and confer process described in the parties' previous discovery dispute letter, the parties appeared in court and defendant was ordered to produce a privilege log. The privilege log identifies twelve sets of notes that defendant is withholding pursuant to the "Deliberative Process Privilege". Counsel have exchanged emails without coming to a resolution concerning discoverability of these notes.

**Internal Investigation and Policy Revision materials:**
*Plf Johnson's Request for Production to Def City of Berkeley RFP No. 17* **(Exhibit A)**

This request pertains to the investigation file in the Berkeley Police Department's Post-Incident Review of the incident in question in this case, a public report (**www.ci.berkeley.ca.us/police/ BPDPostIncidentReview/.**) Plaintiffs requested documents pertaining to the interviews done in connection with the investigation.

**Plaintiffs' position:** Defendant's privilege log reveals that the officers who wrote the investigation report took notes of interviews with BPD and mutual aid commanders regarding the December 6, 7, 8 and 9, 2014, protests. It does not provide sufficient information to support its claim that the notes should be suppressed from discovery.

Privileges derogate the search for the truth and are to be narrowly construed. (*Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987), citing *United States v. Nixon*, 418 U.S. 683, 710 (1974).) The burden of proving all elements essential to invoking a privilege is on the party seeking the benefits. (*Id.* at p. 299.) The deliberative process privilege is qualified and may be overcome by a strong showing of relevance and an inability to obtain the information from other sources. (*Sanchez v. City of Santa Ana*, supra, 936 F2d 1027, 1034 (9th Cir. 1990); *Miller v. Pancucci,* 141 FRD 292, 299 (C.D. Cal. 1992).) Among the factors considered in making this determination are: (i) the relevance of the evidence; (ii) the availability of other evidence; (iii) the government's role in the litigation; (iv) the extent to which disclosure would hinder an independent discussion regarding contemplated policies and decision; and (v) the purpose of the privilege. (*FTC v. Warner Communications Inc.,* 742 F2d 1156, 1161 (9th Cir. 1984).)

Notes of interviews concerning the events are not "deliberative" - they are factfinding. Presumably they provided the raw material from which the report authors wrote the detailed account of the facts that appears in the reports. The notes concerning the protests on subsequent days, as well as the notes concerning the subject protest, are relevant to plaintiffs' claim for injunctive relief and *Monell* claim.

Further, the notes in question are not "predecisional" because the report does not represent any final policy decisions. BPD was required to collaborate with the PRC on the final policy recommendations that would go to the City Council. And many of the "recommendations" set forth in the report are not policies, so much as topics for further research, e.g., "get clarity on the availability of regional radio interoperability"; "explore the use of BPD Negotiators"; "consider proposing changes to the City Council Resolution; "review its policy regarding the use of CS gas

and batons"; "investigate the viability of establishing a regional media credentialing system"; "develop a collaborative training"; "investigate the use of body armor".

Even assuming if the notes were "deliberative" and "predecisional", the federal courts have regularly rejected assertion of deliberative process privilege in the context of police misconduct civil rights litigation and disclosure of police and witness statements and investigative files. In order to assert a claim of privilege against disclosure of police materials to a plaintiff raising federal civil rights claims, the defendant must do more than alert the court to the state privilege law or the generalized policies that support it. The defendant must make a substantial threshold showing that there are specific harms likely to accrue from disclosure of specific materials. (*King v. Conde*, 121 F.R.D. 180, 189 (E.D.N.Y. 1988), citing *Kelly v. City of San Jose, supra*.) In *Kelly v. City of San Jose*, *supra,* the court rejected application of "deliberative process privilege" to police internal investigations and stated that "since there is no empirical support for the contention that the possibility of disclosure would reduce the candor of officers who contribute to internal affairs investigations, and since there are solid reasons to believe that that possibility might have the opposite effect (improving accuracy and honesty), there is no justification for offering near absolute protection to the statements that go into such reports or to the opinions and recommendations that conclude them. In fact..., such material should be *presumptively discoverable* when a plaintiff makes a proper showing of relevance." (*Kelly*, *supra*, 114 F.R.D. at pp. 665–666, emphasis added; accord, *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995) [The "deliberative process" privilege is... inappropriate for use in civil rights cases against police departments."]

It is clear that a litigant may obtain discovery of materials protected by deliberative process privilege if the need for the materials outweighs the governmental interest in keeping the decision-making process confidential. (*Price v. Cty. of San Diego*, 165 F.R.D. 614, 620 (S.D. Cal. 1996).) Similarly to the instant case, *Price* dealt with documents relating to county sheriff's department's formulation of policies regarding hogtying of arrestees. The court found that the documents should be produced because they were highly relevant to the plaintiffs' claims of liability, especially under the *Monell* cause of action, and any infringement upon the frank and independent discussions regarding contemplated County policies and decisions caused by disclosure of these documents could be alleviated through the use of a protective order. (*Ibid*.)

Here, we have a protective order in place; the notes do not necessarily need to be made public. It should be noted however that the report, which is public, as well as the officers' public comments at the Police Review Commission hearing, have already revealed some or all of the self criticism that counsel appears to be trying to protect. For example, the report acknowledges that blocking the road with officers at Martin Luther King Way and Addison caused unnecessary conflict with the crowd and may have precipitated attacks on officers whereas the crowd had been peaceful up to that point. **(Ex. D, *Response to Civil Unrest* report, p. 20, 42.)** Officers did not maneuver formations to locations where property damage occurred quickly enough to mitigate the property damage or arrest those responsible. Decisions to maneuver resources should have been made in the field rather than the operations center. Officers should have paralleled the crowd to prevent violence. (*Id*. at p. 23, 42.) Drivers were not left with police vehicles, slowing down remobilization. There was insufficient traffic control causing delays in setting skirmish lines. Police were not deployed jointly with Fire to provide security for the Fire personnel responded to medical emergencies and small fires. There was insufficient Situational Awareness. (*Id*. at p. 43.) Conflicting orders were given the crowd at Telegraph and Durant. (*Id*. at p. 26.) Both BPD and mutual aid commanders and squad leaders expressed a lack of mission

clarity. (Id. at p. 41.) The overall tactical commander was not in the field. (*Id*. at p. 44-45.) The officers spoke even more frankly about these issues in their public remarks at the PRC as well.

The notes are likely to reveal additional facts, and may help narrow the number of depositions that must be taken in this case.

Plaintiffs have former Chief Meehan's deposition scheduled for December 14 due to his resignation and possible imminent departure from the local area and some of the other defendants the following week. Accordingly, plaintiffs respectfully request a prompt determination of this matter so that counsel is able to review the documents prior to the depositions.

**Defendants' Position:**

**I.    Plaintiffs seek documents that are not related to the December 6, 2014 protest**

Defendants' privilege log (see attached) demonstrates that almost half of the handwritten notes at issue <u>are not related and do not concern the protests that occurred on December 6, 2014</u> (all of plaintiffs' claims arise out of protest activity on December 6). Plaintiffs ignore the information in the privilege log that shows that half of the materials related to dates other than December 6 and involve individuals who were not present at the protest on December 6.[1]

For instance, the privilege log shows that (1) the notes from 3/9/15 and 3/15/14 are about protest activity on December 8, 2014; (2) notes from 3/17/15 are about protests on December 7 and 9, 2014; (3) notes from 3/24/15 are not about any protests, but appear to memorialize a presentation given to members of the Oakland Police Department; (4) undated notes relate to an interview with an Oakland Police Department sergeant (Sgt. Dinh) who is a member of Oakland's "hostage negotiation team" and was not at the protest on December 6, 2014.

Thus, the parties' dispute only involves 6 sets of handwritten notes as follows (as excerpted from defendants' privilege log):

| Date | Author | Subject Matter |
|---|---|---|
| 2/18/15 | Sgt. Dan Montgomery | Notes from interview with BPD commanders (Lt. Rolleri, Lt. Files, Lt. Rateaver, Lt. Hart, Lt. Reece, Capt. Upson, Lt. Louis, Lt. Schofield, Capt. Harris) regarding Dec. 6 and 7, 2014 protests |
| 2/18/15 | Lt. Dave Frankel | Notes from interview with BPD commanders (Lt. Rolleri, Lt. Files, Lt. Rateaver, Lt. Hart, Lt. Reece, Capt. Upson, Lt. Louis, Lt. Schofield, Capt. Harris) regarding Dec. 6 and 7, 2014 protests |

---

[1] Plaintiffs argue notes about protests on "subsequent days" are "relevant to plaintiffs' claim for injunctive relief and *Monell* claim," but they do not explain why this would be the case. Plaintiffs do not need the notes to prove that the protests continued in Berkeley for multiple days after December 6, 2014, and they would not have standing to assert a claim for injunctive relief based on something that happened after the claims that arise in this case. Additionally, they cannot base a *Monell* claim on actions that post-date the alleged infringement of their constitutional rights, because they have to show city policy makers knew about prior, frequent constitutional violations that made the need for further training plainly obvious and were 'deliberately indifferent' to the need." *Board of the County Comm. of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 407 (1997).

| | | |
|---|---|---|
| 3/10/15 | Sgt. Dan Montgomery | Notes form interview with Hayward Police Lt. Will Deplitch regarding Dec. 6 and 8, 2014 protests |
| 3/19/15 | Sgt. Dan Montgomery | Notes from interviews with BPD Lt. Rolleri and Lt. Rateaver, regarding protest response, no date specified |
| 3/19/15 | Sgt. Dan Montgomery | Notes from interviews with BPD commanders (Lt. Reece, Lt. Files, Lt. Louis, Lt. Schofield) regarding protest response, no date specified |
| No date | Sgt. Dan Montgomery | Notes from interview with Fremont Lt. Washington regarding protest response, no date specified |

## II.  Defendants' handwritten notes are protected by the deliberative process privilege

The deliberative process privilege applies to documents that are both "predecisional" and "deliberative." *Hongsermeier v. CIR*, 621 F.3d 890, 904 (9th Cir. 2010). "[A] document is predecisional if it was 'prepared in order to assist an agency decisionmaker in arriving at his decision,'" and "deliberative if its release would 'expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Id*. (citing *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1089 (9th Cir. 2002)).

The deliberative process privilege serves "to allow agencies freely to explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." *Carter*, *supra*, 307 F.3d at 1089.

Citing *FTC v. Warner Communications, Inc.*, 742 F.2d 1156, 1161 (9th Cir. 1984), plaintiffs acknowledge that the deliberative process privilege applies if the document is "predecisional" and "deliberative in nature, containing opinions, recommendations, or advice about agency policies." *Id*. Plaintiffs also acknowledge the privilege cannot be overcome where the evidence is available from other sources, and where disclosure would "chill[ ] frank discussion and deliberation in the future among those responsible for making government decisions." *Id*. (holding that district court abused its discretion in ordering production of memoranda protected by deliberative process privilege).

Plaintiffs cite *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990), *Miller v. Panucci*, 141 FRD 292, 299 (C.D. Cal. 1992), and the New York case *King v. Conde*, 121 F.R.D. 180, 1889 (E.D. NY 1988) claiming that they hold the deliberative process privilege can be overcome by "a strong showing of relevance and an inability to obtain the information from other sources," and that defendant has to show "specific harms" that will accrue from disclosure. However, *Sanchez*, *Miller* and *King* are all inapposite. All three involve the "official information" privilege, not the "deliberative process" privilege, and all three involve officer personnel records and internal affairs complaints, and not notes of deliberative discussions related to proposed police changes. See *Id*. Likewise, plaintiffs miscite *Kelly v. City of San Jose*, 114 F.R.D. 653, 659 (N.D. Cal. 1987). That case did not reject application of the deliberative process privilege; it involved the official information privilege and its application to citizen and internal affairs complaints against an officer. The court discussed the deliberative process privilege (and other privileges) in dicta.

4

Another case cited by plaintiffs, *Soto v. City of Concord*, 162 F.R.D. 603, 612 (N.D. Cal. 1995), also involved "internal affairs investigations as well as records of witness/police officer statements." *Id*. The court held that internal affairs records were not protected by the deliberative process privilege, but said the deliberative process privilege "<u>should be</u> invoked" in cases like this one involving "communications designed to directly contribute to the formulation of important public policy." *Id.* (emphasis added). Similarly, in *Price v. City of San Diego*, 165 FRD 614, 620 (S.D. Cal. 1996), the court held that the deliberative process privilege did not apply to documents "reflecting the prior knowledge of the County that hogtying could lead to suffocation and even death" given those records "would be directly relevant to showing a deliberate indifference by the Sheriff's Department" in support of plaintiff's *Monell* claim. *Id*. Here, the notes at issue are not records "reflecting the prior knowledge" of the City on any claim before the court, but were an effort to assess what improvements could be made to crowd control policies.

### A. The handwritten notes are "predecisional" as they were created prior to and for the purpose of making policy recommendations

The purpose of the department's Report about the protests was to identify "opportunities for the Department to improve." *See* June 9, 2015 Letter from Police Chief Michael Meehan: http://www.cityofberkeley.info/uploadedFiles/Police/Level_3_-_General/PIRChiefCover.pdf.

The 60-page Report resulted in thirty two (32) separate policy recommendations. The notes of interviews with BPD and other law enforcement commanders were taken to assist the department in determining if any changes to the department's crowd control policies were warranted. BPD commanders were asked for their candid assessments and opinions about the overall police response to the protests, and they had no expectation that notes of what they said would be publicly shared – or shared with plaintiffs who are suing them. Candid discussion of this kind is intended to result in benefits to policies and would be "chilled" if required to be disclosed in discovery.

### B. The notes are deliberative and not "factfinding"

Plaintiffs "presume" that the notes are "factfinding" and not "deliberative."[2] Not only are the handwritten notes not "factfinding," they are simply an author's attempt to memorialize various people's opinions about how to improve police response to a protest. However, they are deliberative, containing "opinions, recommendations, or advice about agency policies, generated prior to a final policy decision." *Kelly v. City of San Jose*, 114 FRD 653, 659 (N.D. Cal. 1987). First, the dates on the notes show that they are not "factfinding," because they were taken two to four months *after* the December 6, 2014 protest. A person seeking factual details about an incident would not wait two to four months to gather recollections. Second, the notes attempt to record the opinions of numerous commanders who were *inside the police station*, and not out in the field, and they are not a factual record of what commanders were doing inside the station (the

---

[2] Plaintiffs "presume" that the notes "provided the raw material from which the report authors wrote the detailed account of the facts that appears in the report." But this is not the case. To the extent that the "facts" about what occurred during the protests were memorialized in any documents, those documents have been provided to plaintiffs, and include the dispatcher logs, hundreds of videos, property damage reports, injury reports, Incident Action Plans, briefing notes, After Action Reports by other agencies, etc.

facts of what they were doing is in the dispatcher log).  In fact, the Report states that commanders inside the police station had poor situational awareness and had to depend on reports from the field, "social media, video live streams and news media" to learn what was happening during the protests.  Report at 43 (Situational Awareness).  Of the nine BPD commanders who participated in the discussion on 2/18/15, five, including Lt. Rolleri, Lt. Rateaver, Lt. Hart, and Capt. Upson, were inside the police station during the 12/6/14 protest, while Capt. Cynthia Harris was not even on duty or in Berkeley.  "Factfinding" discussions would not include commanders who were not even present during the protest on December 6.

### C. The "facts" plaintiffs seek are available from other sources

Plaintiffs cannot meet their burden of showing that the information they seek ("raw material from which the report authors wrote the detailed account of the facts that appears in the report") is not available from other sources.  *See* FTC, supra, 742 F.2d at 1161.  First, they acknowledge the Report itself contains "a detailed account of the facts."  Second, they acknowledge that "officers spoke even more frankly about these issues in their public remarks at the PRC" (Police Review Commission.)

In addition to the factual information provided by Berkeley, plaintiffs received from Hayward more than 200 pages of police records, including detailed use of force reports, individual officer "case reports," an After Action Report, and emails about the December 6, 2014 protest.  By contrast, Berkeley Sgt. Montgomery wrote one single-sided page of handwritten notes of his discussion with Hayward Lt. Deplitch (approximately 20 lines).  It strains reason and logic to say that the "facts" of what happened would be gleaned from a single page of notes rather than the hundreds of pages of documents provided by Hayward.  Other agencies, including Alameda Police, also provided After Action Reports, which plaintiffs received.  Thus, plaintiffs cannot show an "inability to obtain the information from other sources," as they already have hundreds of pages of source documents, and plan to take 20 depositions.

Plaintiffs assert the deliberative process privilege does not apply because "there was no final policy decision" in the Report.  But the 32 Recommendations in the Report were *the Department's* policy recommendations and many of them will result in final policy changes.

Respectfully submitted,

Dated: Nov. 14, 2016   LAW OFFICES OF JAMES B. CHANIN
RACHEL LEDERMAN & ALEXSIS C. BEACH,
Attorneys at Law
/S/
By: RACHEL LEDERMAN
Attorneys for Plaintiffs


Dated: Dec. 7, 2016   BERKELEY CITY ATTORNEY'S OFFICE
LYNNE BOURGAULT, Deputy City Attorney
/S/
By: LYNNE S. BOURGAULT
Attorneys for Defendants